LAWYER DISCIPLINARY PROCEEDINGS

|,VICTORY, J.
The instant attorney disciplinary matter arises from two counts of formal charges instituted against respondent, Louis “Thad” Toups,[1] by the Office of Disciplinary Counsel (“ODC”).
FACTS AND PROCEDURAL HISTORY
Respondent has been an Assistant District Attorney in Lafourche Parish since 1982. He is also permitted to maintain a private civil practice while holding his pub-lie position. In' March 1997, Ellen Or-doyne retained respondent to represent her in connection with a divorce and corn-munity property matter and a motion for a protective order against her husband, Todd.[2] Mr. Ordoyne was represented in these proceedings by Stephen Caillouet, who is also an Assistant District Attorney in Lafourche Parish.[3]
|2Sometime in late March, Mrs. Ordoyne complained to respondent that her husband had hit her during their marriage. Respondent advised his client that she could file a criminal complaint on these grounds. On April 1, 1997, Mrs. Ordoyne appeared before a Lafourche Parish Justice of the Peace and signed an affidavit attesting that her husband had battered her on a number of occasions between December 1996 and March 1997. It is unclear whether respondent knew that Mrs. Ordoyne had taken this action.[4] Nevertheless, a simple battery charge against Mr. Ordoyne was ultimately referred to the District Attorney’s office in the judicial district where respondent and Mr. Caillouet are Assistant District Attorneys.
On April 3, 1997, respondent and Mr. Caillouet met with Mr. and Mrs. Ordoyne to discuss the domestic matters. The sub *712 ject of Mrs. Ordoyne’s criminal complaint against her husband was not raised at this time.[5] By all accounts, however, the parties left the meeting with the impression that all of the issues discussed that day between Mr. and Mrs. Ordoyne had been resolved.
Mr. Ordoyne was never arrested in connection with the criminal charge. Instead, a notice of arraignment was served at his mother’s home in early May 1997. Mr. Ordoyne’s mother telephoned Mr. Cail-louet and asked him whether her son would have to miss work to appear in court. Mr. Caillouet told her that he would try |3to determine who had filed the complaint, but advised that Mr. Ordoyne would have to find other representation for the criminal matter.
On May 7, 1997, Mr. Caillouet examined the record in the criminal case and learned, apparently for the first time, that Mrs. Ordoyne had filed a criminal complaint against her husband. Mr. Caillouet determined that the conduct forming the basis of the criminal complaint was essentially the same as the conduct forming the basis of Mrs. Ordoyne’s motion for a protective order. Believing that all issues between Mr. and Mrs. Ordoyne had been resolved during the April 3rd meeting, including Mrs. Ordoyne’s allegations of physical abuse during the marriage, Mr. Caillouet suggested to respondent that the criminal case against Todd Ordoyne be continued without date. Mr. Caillouet claims that he made this suggestion in order that Mr. Ordoyne would not have to miss a day of work for arraignment on charges which Mr. Caillouet understood would be mooted by the parties’ settlement agreement. At no time, however, did Mr. Caillouet suggest, discuss, or recommend to respondent that the criminal case against Mr. Ordoyne be dismissed.
There is conflicting testimony in the record concerning respondent’s reaction to Mr. Caillouet’s proposal. According to Mr. Caillouet, respondent confirmed that all issues between Mr. and Mrs. Ordoyne had been settled, and respondent agreed that the criminal case be continued without date. However, respondent claims that he told Mr. Caillouet that this was the first he had heard of the criminal charge, and stated that he had not spoken with Mrs. Or-doyne and did not know what she would want to do about the matter, i.e., whether she would agree to drop her criminal complaint because all other issues involving her husband had been resolved. Nevertheless, despite respondent’s asserted disagreement with the course of action Mr. Caillouet had proposed, respondent did not bring the matter to the attention of his client, the |4court, or his superiors in the District Attorney’s office. For his part, Mr. Caillouet asked one of the clerical workers in the District Attorney’s office to make an entry in the computer concerning Mr. Ordoyne’s arraignment: “CWOD [continued without date] pending civil matter per SEC [Mr. Caillouet]. He says Thad [respondent] has agreed to this.”
Mr. Ordoyne was scheduled to be arraigned the following day, May 8, 1997, in the 17th JDC, Division “A.” This was the division of court normally handled by Mr. Caillouet; however, he could not be present on that day because he was recovering from a heart attack. As a result, respondent was asked to handle the criminal docket in Division “A” that day. Respondent saw a notation on the docket sheet that the Ordoyne case was to be “CWOD — pending civil matter per SEC.” Respondent claims he told his assistant that he could not handle anything related to the Ordoyne matter, and that he passed over the case without calling it. However, the court’s minutes reflect that “on motion of the State, the court ordered that this matter be continued without date.”
*713 Several days later, when Mrs. Ordoyne telephoned the District Attorney’s office to inquire about the status of her husband’s criminal case, she was told that respondent and Mr. Caillouet had agreed to continue the case without date. Mrs. Ordoyne was angered by this news and demanded an explanation from respondent. Respondent thereafter instructed the District Attorney’s office to change the “CWOD pending civil matter per SEC” notation in the computer to include “Thad advised his client will not agree to this.” Not satisfied with respondent’s answer, Mrs. Ordoyne confronted the Lafourche Parish District Attorney, Walter “Butch” Naquin, Jr. Mr. |sNaquin subsequently ordered both respondent and Mr. Caillouet to withdraw from the Ordoyne civil matter.[6]
In an unrelated matter, Alva Harris retained respondent to represent him in a divorce proceeding. During the pendency of the divorce, Mr. Harris’ wife, Elizabeth, filed simple battery charges against him. Those charges were ultimately lodged in Thibodaux City Court, where respondent was one of the assigned city prosecutors. On June 4, 1991, two weeks before the case against Mr. Harris was scheduled to be tried, respondent wrote to Mrs. Harris’ attorney, F. Smith “Smitty” Knobloch,[7] about concluding the community property settlement. Respondent then added:
Since Mr. Harris is now living in North Carolina and there is no chance that there will be any further physical disagreement between the parties, I decided to ask that the charges against Mr. Harris he continued without date. I have advised him that he is to stay clear of Mrs. Harris. As per our telephone conversation of several weeks ago, it is not reasonable to expect him to come back from North Carolina on these charges and situations like this are commonly handled in such a manner. [emphasis added]
On the day of trial, the matter was in fact continued without date by Camille Mor-vant, the Assistant District Attorney assigned to the case; however, respondent denied that he directed Mr. Morvant to do so. The charges against Mr. Harris were nolle prosequied by Mr. Morvant one year later.
Mrs. Ordoyne filed a complaint with the ODC on June 10, 1997. The ODC commenced an investigation, and on July 29, 1998, filed one count of formal charges against respondent and Mr. Caillouet jointly. As to respondent, the ODC alleged the following: his failure to communicate to Mrs. Ordoyne that the criminal prosecution against her husband was being continued violated Rule 1.4 (failure to eom-municate |fiwith a client); his failure to communicate to the DA’s office that Mr. Caillouet intended to act in a manner which constituted a violation of a legal obligation to the organization violated Rule 1.13(b) (a lawyer’s duties to an organizational client); his failure to advise the court of the efforts made by Mr. Caillouet to improperly remove the matter from the court’s docket when presented with the opportunity to do so violated Rule 3.3 (candor toward the tribunal); his failure to report Mr. Caillouet’s misconduct to the ODC or other appropriate authority violated Rule 8.3 (reporting professional misconduct); and his failure to take any action to bring the matter to the attention of appropriate authorities knowingly assisted and/or induced Mr. Caillouet to violate the Rules of Professional Conduct violated Rule 8.4(a) (assisting another in violating the Rules of Professional Conduct).
Mrs. Harris complained to the ODC concerning respondent after reading of Mrs. Ordoyne’s complaint in the newspaper. On December 7, 1998, the ODC amended the formal charges against respondent to *714 add a second count pertaining to the Harris matter. In Count II, the ODC alleged that respondent’s conduct violated Rules 1.7 (conflict of interest), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. Respondent answered both counts of the formal charges and denied any misconduct.
Before the matter could proceed to a formal hearing before a hearing committee, Mr. Caillouet tendered a petition for consent discipline.' Accordingly, the charge against Mr. Caillouet was severed, and the case against respondent alone was presented to a hearing committee on January 20,1999.
On May 11, 1999, the hearing committee .filed its recommendation with the disciplinary board. In a twenty-three page report, two members of the committee [7recommended the formal charges against respondent be dismissed, on the ground that the ODC failed to prove the alleged violations by sufficient clear and convincing evidence.[8] The public member of the committee filed a twelve-page dissent, finding that respondent engaged in the misconduct charged in the formal charges and recommending a suspension of no less than six months.
A majority of the hearing committee found respondent’s testimony, and that of his witnesses, very credible. However, they found the testimony of the complainant, Mrs. Ordoyne, conflicting. The committee noted it was difficult to ascertain a reasonable motive for respondent’s conspiring with Mr. Caillouet to effectuate, or even to merely acquiesce in, a continuance in the .criminal case against Mr. Ordoyne. They further found no evidence that respondent believed Mr. Caillouet was doing anything unethical in continuing Mr. Or-doyne’s case, and thus determined that respondent cannot be faulted for failing to report what is now alleged to be improper conduct by Mr. Caillouet. Under these facts, the committee also concluded that respondent had no ethical duty to affirmatively advise his client, Mrs. Ordoyne, of the status of Mr. Ordoyne’s criminal charges. Accordingly, the committee recommended that the charges in Count I be dismissed.
Concerning Count II, the committee found there was no evidence presented to support the ODC’s theory that respondent intervened in the criminal prosecution of Mr. Harris while at the same time representing Mr. Harris in a civil matter. The committee suggested that even if the ODC’s interpretation of respondent’s letter to Mrs. Harris’ attorney is accepted, it is inconceivable that opposing counsel would have remained .silent in the face of such unethical and illegal conduct. Moreover, the [^Assistant District Attorney assigned to the case would also have had to have been a “conspirator” in respondent’s plan. Suggesting that the formal charges in Count II “must fall under the weight of their own improbability,” the committee recommended that the charges in Count II be dismissed.
The disciplinary board deferred to the hearing committee’s factual findings and recommended that the formal charges be dismissed. Citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), the board stated:
In this case the determination of whether the Respondent engaged in misconduct turns largely on the interpretation of what occurred between the Respondent and Mr. Caillouet with reference to their clients. The Hearing Committee determined the Respondent’s testimony was credible and gave it more weight than that of the complainant, thus dis *715 missing the charges. Since there is nothing in the record that would indicate that the findings of the Hearing Committee were clearly wrong, the Board will adopt its findings and recommendation, thus recommending dismissal of the charges against the Respondent.
The ODC has filed an “appeal” of the board’s ruling in this Court.
DISCUSSION
The ODC argues that respondent ignored the conflict of interest in the Or-doyne and Harris matters, violating his sworn constitutional duties as an Assistant District Attorney and his obligations under the Rules of Professional Conduct. The ODC argues that once Mrs. Ordoyne filed a criminal complaint against her husband, respondent should have immediately notified his respective clients — public and private — of the conflict of interest and withdrawn from the representation, as is required by the Rules of Professional Conduct. When Mr. Caillouet did not withdraw and instead intervened to continue the criminal case without date for the benefit of his civil client, respondent was required to immediately notify his clients of Mr. | pCaillouet’s actions. The ODC argues that respondent’s failure to report the conflict encouraged Mr. Caillouet to continue to violate the ethical rules and concealed Mr. Caillouet’s misconduct from scrutiny, thereby subjecting respondent’s public and private clients to great actual and potential harm.
Respondent argues that the ODC fails to give the hearing committee and disciplinary board the deference those bodies are due in the absence of manifest error. Abiding to this standard, respondent contends there can be no conclusion reached other than that the ODC did not prove its case by clear and convincing evidence. Further, respondent argues that he never thought Mr. Caillouet was doing anything wrong or unethical in trying to postpone Mr. Ordoyne’s arraignment; otherwise, he would have reported it immediately. For all of these reasons, respondent urges that this count of the formal charges was properly dismissed.
Turning to the Harris matter, respondent argues that the ODC is attempting to use one sentence in a letter to. support its contention that respondent used his public office to benefit a private client. Respondent testified candidly that he has no recollection of the 1991 letter and that the ODC can offer no evidence to support the formal charges, and respondent urges that this count of the formal charges was properly dismissed.
The hearing committee and disciplinary board erred in recommending that the formal charges be dismissed for lack of clear and convincing evidence. The record of this matter demonstrates an obvious conflict between the ADA’s obligations to his private clients and those he owes to the people of the State of Louisiana as an Assistant District Attorney. Article 5, § 26 of the Louisiana Constitution states that “No District Attorney or Assistant District Attorney shall appear, plead or in any way defend or assist in defending any criminal prosecution or charge.”
|inWe recognize that at the time the conduct at issue occurred, the Lafourche Parish District Attorney’s office had no policy or rules regarding conflicts of interest arising out of ADA’s representation of civil clients. After these incidents occurred, the DA’s office did institute such a policy. However, the absence of such a policy does not excuse Toup’s conduct in this case in light of the clear application of the Rules of Professional Conduct.
Dual representations by an attorney who is first and foremost a district attorney present potential and actual conflicts of interest which have troubled courts for many years. In our system of justice, we entrust vast discretion to the prosecutor in deciding which cases to pursue, what crimes to charge, and how to allocate limited resources. Because the prosecutor is given such great power and *716 discretion, he is also charged with a high ethical standard.
In West Virginia ex rel. Bailey v. Facemire, 186 W.Va. 528, 413 S.E.2d 183, 184-85 (1991), the court dealt with the problem in/the following way:
Based on the potential for conflicts of interest presented by the prosecutor’s dual role of representing the state in criminal matters as well as representing the interests of a civil client in a domestic proceeding, we hold that a prosecuting attorney has an obligation to use reasonable efforts to ascertain whether there is an actual or potential conflict prior to accepting representation of a civil client. When such a conflict or potential conflict presents itself, the prosecutor must, depending on the circumstances, either refrain from accepting representation or withdraw as counsel. In the event the conflict arises during the course of representation, the prosecuting attorney has an affirmative obligation to seek appointment of a special prosecuting attorney and remove himself from the case in all respects.
See also Pennsylvania v. Dunlap, 474 Pa. 155, 377 A.2d 975 (1977); Sharplin v. Mississippi, 330 So.2d 591 (Miss.1976) (holding that although a prosecuting attorney’s prior representation of a defendant in a civil suit does not ipso facto bar that attorney from ^participating in a subsequent prosecution of the defendant, the attorney should be disqualified if (1) the criminal prosecution is substantially related to the prior civil suit or involves essentially the same facts, or (2) the attorney would be called upon to use against the defendant confidential information gained through their former relationship); Seventh District Committee of the Virginia State Bar v. Gunter, 11 Va. Cir. 349 (1969) (holding that for a prosecutor to remain as counsel in a divorce case and at the same time set in motion the prosecution of his client’s adversary was unprofessional, unethical, and deserving of strong censure); Ganger v. Peyton, 379 F.2d 709 (4th Cir.1967) (where a prosecutor represented the wife in a divorce action and prosecuted the husband for felonious assault, the court vacated the husband’s conviction sentence because of the prosecutor’s conflict of interest); Colorado v. Attorneys Respondent, 162 Colo. 174, 427 P.2d 330 (1967) (disciplining an assistant district attorney for using the power and prestige of his office in filing a criminal complaint against a woman and in extraditing her from another state for the purpose of assisting his civil client in collecting a debt allegedly due from the woman).
After considering the important policy reasons behind avoiding conflicts of interest between a district attorney’s pros-ecutorial rule on behalf of the state and his duty to protect the interests of his civil clients, we find that, in order to comply with the Rules of Professional Conduct, a district attorney must immediately withdraw from the civil representation of a client when there is substantial reason to believe that charges of criminal conduct have been or will be filed by or against the civil client. When criminal charges have been filed against a civil client, this rule applies even if the criminal charges are unrelated to the civil representation.
Therefore, respondent was prohibited from continuing his representation in the Ordoyne divorce matter after Mrs. Or-doyne filed a criminal battery complaint against 112her husband. Respondent found out that Mrs. Ordoyne had filed criminal charges against her husband on May 7, 1997, at the latest. At that time, he should have withdrawn from his representation of Mrs. Ordoyne and should not have acquiesced in Mr. Caillouet’s request that the criminal case be continued; if respondent did not acquiesce in that request, as he claims, he should have brought the matter to the immediate attention of the court and/or his superiors in the District Attorney’s office. Further, Mr. Toup’s conduct in failing to report Mr. Caillouet’s attempt to have the matter continued without date on behalf of his civil client while *717 at the same time representing the State of Louisiana as an ADA was a violation of Rules 1.13(b), 3.3, 8.3, and 8.4(a) of the Rules of Professional Conduct. In the Harris matter, the record clearly and convincingly shows that respondent used his influence as an ADA to have the criminal charges continued and perhaps dismissed against Mr. Harris, his client in the civil matter. At the very least, this conduct violates Rule 1.7, (conflict of interest) and Rule 8.4 (engaging in conduct prejudicial to the administration of justice).

SANCTIONS

This Court has never been confronted with professional misconduct on the part of assistant district attorneys in connection with their representation of civil clients. The ABA Standards for Imposing Lawyer Sanctions provide that “in imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer’s mental state; and (c) the actual or potential injury caused by the lawyer’s misconduct; and (d) the existence of aggravating or mitigating factors.” Standard 3.0.
As to Count I, we conclude Standards 4.62[9], 4.63[10], 5.22[11], 5.23[12], 7.2[13], and 7.3[14] are applicable under the circumstances. Thus, we conclude that the baseline sanction for respondent’s conduct in Count I is suspension. However, considering the existence of only one aggravating factor, i.e., substantial experience in the practice of law, and several mitigating factors, i.e., absence of a prior disciplinary record, absence of a dishonest or selfish motive, cooperative attitude toward proceedings, and evidence of good character, we find that a public reprimand is appropriate for respondent’s violations under Count I.
As to Count II, we find that Standards 4.32[15], 4.33[16], 5.22, 5.23, 7.2, and 7.3 are applicable under the circumstances. Thus, we conclude that the baseline sanction for respondent’s conduct in Count II is suspension. However, because of respondent’s personal violation of the conflict of interest rules, rather than his failure to report a conflict of interest as occurred' in Count I, we do not reduce the baseline sanction, even in light of the mitigating factors as found in Count I. Therefore, | i4respondent is suspended for a period of six months, fully deferred, with a probationary period of two years, for his viola *718 tion of Rules 1.7 and 8.4 of the Rules of Professional Conduct in the Harris matter.
DECREE
Upon review of the record, briefs, and oral argument, it is ordered that Louis “Thad” Toups be publicly reprimanded and suspended from the practice of law in Louisiana for a period of six months, fully deferred, with a probationary period of two years. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this Court’s judgment until paid.
LEMMON, J., dissents and will assign reasons.

. Respondent, a Thibodaux attorney, is 49 years old and was admitted to the practice of law in Louisiana in 1977.

. The motion for a protective order had been filed by Mrs. Ordoyne’s previous attorney.

. Mr. Caillouet also faces disciplinary action arising out of the Ordoyne matter. Before the disciplinary matter could proceed to a formal hearing before a hearing committee, Mr. Cail-louet tendered a petition for consent discipline, acknowledging an “unintentional” violation of Rule 1.7 of the Rules of Professional Conduct. Mr. Caillouet proposed that he be publicly reprimanded. The ODC concurred in the petition and conceded that Mr. Cail-louet had acted without improper motive or intent. However, the disciplinary board deferred ruling on the proposed consent discipline pending the filing of the hearing committee's recommendation in the Toups matter. After the committee filed its report in the Toups matter, recommending dismissal of all charges against Mr. Toups, Mr. Caillouet moved to withdraw his petition for consent discipline, presumably believing that he, like Mr. Toups, was entitled to have the charges against him dismissed. Over the ODC’s objection, the vice-chair of the disciplinary board signed an order permitting Mr. Cail-louet to withdraw his petition for consent discipline. In Re: Stephen E. Caillouet, 00-B-0771 and 00-B-0824, the Court issued an Order allowing Mr. Caillouet to withdraw his petition for consent discipline and remanding the matter to the ODC for prosecution of the formal charges previously filed against him.

. According to Mrs. Ordoyne, she telephoned respondent's office the same day she filed the criminal complaint to tell him that she had done so. Respondent denies this.

. Mrs. Ordoyne testified that respondent expressly instructed her not to bring up the subject. Respondent claims that he was unaware of the criminal complaint and thus could not have brought it up at the meeting.

. On May 19, 1997, Mr. Ordoyne was issued a new notice of arraignment on the criminal charges, and in October 1997, he pled no contest to simple battery.

. Mr. Knobloch died some time after June 1991.

. Much of the committee’s analysis appears predicated upon the fact that the Lafourche Parish District Attorney does not have a formal, written policy on conflicts of interest, nor does it conduct formal in-house training on recognizing and preventing conflicts that can give rise to unprofessional conduct.

. Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

. Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

. Suspension is generally appropriate when a lawyer in an official or governmental position knowingly fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

. Reprimand is generally appropriate when a lawyer in an official or governmental position negligently fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

. Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.

. Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.

. Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

. Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to client.