# Supreme Court of Louisiana

The Opinions handed down on the **18th day of October, 2017**, are as follows:

**PER CURIAM**:

**2017-B -0874        IN RE: C. MIGNONNE GRIFFING**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that C. Mignonne Griffing, Louisiana Bar Roll number 19601, be and she hereby is suspended from the practice of law for one year and one day. It is further ordered that all but six months of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for one year, subject to the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

Retired Judge Hillary Crain assigned as Justice ad hoc, sitting for Clark, J., recused.

JOHNSON, C.J., concurs in discipline assigned.
GUIDRY, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2017-B-0874

IN RE: C. MIGNONNE GRIFFING

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM[*]

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, C. Mignonne Griffing, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

Since 1990, respondent has been employed as an Assistant United States Attorney ("AUSA") for the Western District of Louisiana, Shreveport Division. At all times relevant herein, respondent was primarily assigned to prosecute white collar and public corruption cases.

During the course of her employment as an AUSA, respondent began and maintained what the formal charges describe as an "intimate, romantic relationship" with a Special Agent of the Federal Bureau of Investigation ("FBI").[1] The FBI agent was typically the lead investigating law enforcement agent on many of the criminal prosecutions advanced by respondent. While his testimony at trial was not consistently required, the FBI agent was often the principal witness in grand jury

---

[*] Retired Judge Hillary Crain, assigned as Justice Ad Hoc, sitting for Clark, J., recused.

[1] The hearing committee and disciplinary board reports do not contain much detail about the nature of respondent's relationship with the agent, who was married at the time. The agent is referred to in the formal charges, and occasionally throughout the record, by his initials; however, in this opinion he is simply referred to as "the FBI agent."

presentations and at various hearings where respondent sponsored his testimony on behalf of the prosecution. Respondent and the FBI agent worked to keep their relationship confidential.

*Counts I & II*

Respondent, on behalf of her client the United States Department of Justice ("DOJ"), initiated the prosecution of Monroe councilmen Robert "Red" Stevens and Arthur Gilmore (Count I) and Ouachita Parish Sheriff Royce Toney (Count II). The FBI agent was the lead investigative agent in both matters. At no time during either prosecution did respondent disclose to the United States Attorney or the defendants that the investigations were performed by the FBI agent, whose testimony she sponsored. Respondent's relationship with the FBI agent created a conflict or potential conflict of interest which she was ethically bound to disclose to the United States Attorney, but which she failed to do. Because the relationship with the FBI agent could reasonably give rise to a basis for questioning the interest and/or credibility of the witness by the defense, the existence of the relationship should have been disclosed to the defendants, but respondent failed to do so.

The ODC alleged that respondent's conduct violated Rules 1.7 (a lawyer shall not represent a client if the representation involves a concurrent conflict of interest), 3.8(d) (the prosecutor in a criminal case shall make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal), and 8.4(a) (violation of the Rules of Professional Conduct) of the Rules of Professional Conduct.

2

*Count III*

In connection with respondent's prosecution of Sheriff Toney, as set forth in Count II, the defendant's attorney, A.M. "Marty" Stroud, III, was assured by respondent that his client would not be indicted during the month of February, and held the belief that his client, if indicted, would be allowed to self-surrender. Mr. Stroud related respondent's assurances to his client. Nevertheless, when respondent learned that Sheriff Toney was believed to be "spreading rumors" regarding her relationship with the FBI agent she called Mr. Stroud and threatened to have Sheriff Toney arrested, handcuffed, and "perp walked" out of the Sheriff's Office if he did not refrain from spreading such rumors. Subsequently, Sheriff Toney was indicted in February and was arrested, handcuffed, and led out of his office by law enforcement, resulting in his termination of Mr. Stroud's representation.

The ODC alleged that respondent's conduct violated Rules 8.4(a) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

*Count IV*

During the course of the prosecutions described in Counts I and II, the United States Attorney for the Western District of Louisiana was informed of the allegations regarding respondent's relationship with the FBI agent. Upon questioning by the United States Attorney, respondent falsely denied and/or misled the United States Attorney regarding the relationship.

The ODC alleged that respondent's conduct violated Rules 8.4(a) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

3

**DISCIPLINARY PROCEEDINGS**

In March 2013, Sheriff Toney filed a complaint against respondent with the ODC. In March 2016, the ODC filed formal charges against respondent as set forth above. Respondent answered the formal charges and admitted she had a personal relationship with the FBI agent. She further admitted she had an obligation to disclose the relationship to the United States Attorney and to the defendants; however, she denied the relationship created a conflict of interest. Respondent denied any misconduct relating to the allegations in Count III of the formal charges.

*Formal Hearing*

This matter proceeded to a formal hearing conducted by the hearing committee on July 7-8 and September 27, 2016. The ODC called Mr. Stroud, Sheriff Toney, and First Assistant United States Attorney Alexander Van Hook to testify before the committee. Respondent called numerous character witnesses to testify before the committee. She also testified on her own behalf and on cross-examination by the ODC.

Prior to the hearing, the parties entered into factual stipulations, including the following:

1. While employed as an AUSA, respondent and the FBI agent commenced and maintained a personal, intimate relationship. There is no evidence to indicate that the FBI agent's testimony was anything other than truthful and supported by the evidence, nor any evidence that it was influenced or colored in any way by their personal relationship. Respondent and the FBI agent made an effort to keep their relationship confidential because the FBI agent was married.

2. On behalf of the United States Attorney's Office, respondent initiated the prosecution of two Monroe city councilmen, Robert "Red" Stevens and Arthur Gilmore. The FBI agent was the lead investigative agent. Although

4

the FBI agent was a witness before the grand jury and at trial, respondent did not disclose the existence of the relationship to either her supervisors or the defendants. Respondent acknowledges that the relationship could reasonably have given rise to a basis for questioning the interest and/or credibility of the FBI agent by the defendants and should have been disclosed.

3. On behalf of the United States Attorney's Office, respondent initiated the prosecution of Ouachita Parish Sheriff Royce Toney. The FBI agent was the lead investigative agent. Although the FBI agent was a witness before the grand jury and at a pre-trial hearing, respondent did not disclose the existence of the relationship to either her supervisors or the defendant. Respondent acknowledges that the relationship could reasonably have given rise to a basis for questioning the interest and/or credibility of the FBI agent by the defendant and should have been disclosed.

4. In connection with the prosecution of Sheriff Toney, respondent advised the sheriff's counsel, Mr. Stroud, that the sheriff would not be indicted in February 2012 because that is what she had been told by her supervisors. The next day, respondent was advised by her supervisors to present the Toney case to the February grand jury. Though respondent told her supervisors of the assurances she had given Mr. Stroud, respondent was instructed to proceed with the case to the February grand jury. She was instructed that she was not to tell Mr. Stroud until Sheriff Toney was arrested. To that end, respondent wrote a letter to Mr. Stroud that she had hand delivered to him following Sheriff Toney's arrest. Sheriff Toney's arrest was authorized by management of the United States Attorney's Office and executed by the FBI. Sheriff Toney was arrested in the same place and in the same manner as his co-defendant and subordinate who had been arrested several months earlier.

5. In June 2012, four months after Sheriff Toney's indictment, Mr. Stroud advised the United States Attorney's Office that he believed respondent and the FBI agent had an inappropriate relationship. When questioned by the United States Attorney, respondent was not immediately and fully forthcoming. Shortly thereafter, respondent advised the First Assistant of the exact nature of the relationship.

6. The DOJ has completed its investigation into respondent's conduct. In accordance with DOJ policies, respondent was suspended without pay for nineteen days. Respondent has already served this suspension. Respondent has returned to her employment and is actively engaged as an appellate attorney.

*Hearing Committee Report*

After considering the testimony and the other evidence in the record, the committee made the following findings:

Sheriff Toney's original defense counsel, Mr. Stroud, testified that when he was retained by Toney, he had a telephone conference with respondent in which he stated that he wanted Sheriff Toney to be able to appear by citation versus being arrested. Mr. Stroud testified that he received assurances from respondent that Sheriff Toney would be able to surrender by citation. Mr. Stroud further testified that he had had similar conversations with respondent in the past and that those assurances in those prior matters had been honored. The committee found Mr. Stroud's testimony credible despite the fact that respondent testified she never committed to self-surrender and would not have done so because she knew she would not be the person making the decision as to self-surrender versus arrest.

There was another exchange between respondent and Mr. Stroud, via e-mail, in which respondent committed to Mr. Stroud that Sheriff Toney would not be

6

indicted in February 2012. Respondent admits that commitment. The committee concluded that respondent did not voluntarily break her commitment. According to the testimony of Mr. Van Hook, the decision was made to proceed with a February indictment based on certain acts by Sheriff Toney which were intended to intimidate witnesses or otherwise obstruct the government's investigation. Respondent was ordered not to communicate to Mr. Stroud that, in fact, the indictment would be occurring in February.

There was yet another telephone conversation that occurred between respondent and Mr. Stroud. A call was made by respondent to Mr. Stroud during which respondent advised Mr. Stroud that if Sheriff Toney did not stop spreading rumors about her relationship with the FBI agent, she was going to have Sheriff Toney arrested. Respondent testified that she was trying to deliver the message that Sheriff Toney must stop trying to intimidate witnesses and obstruct the government's investigation. In her sworn statement, respondent testified that when she had this telephone conversation with Mr. Stroud, she already knew that Sheriff Toney was endeavoring to affect the outcome of the investigation by threats and harassment. She further stated that she used her relationship with the FBI agent as an "example" of Sheriff Toney's misconduct. She stated that she was trying to protect her witness (an employee of Sheriff Toney) and her witness' husband and therefore did not mention their names or the specific actions of Sheriff Toney because he was not aware the witness was cooperating. However, the fact remains that the only topic that respondent mentioned in her telephone conference with Mr. Stroud was the issue of Sheriff Toney's spreading rumors about her relationship with the FBI agent. Respondent admits that she should not have made the call to Mr. Stroud.

Mr. Stroud testified that respondent further told him that if Sheriff Toney did not stop spreading rumors about her and the FBI agent, she would not only have

Sheriff Toney arrested, but that he would be "handcuffed and perp walked out of the Sheriff's Office." Respondent denies that she made such threats, stating that it is totally up to the FBI as to the method of arrest employed. The committee found Mr. Stroud's version of the conversation credible. The committee agreed with Mr. Van Hook that respondent's call to Mr. Stroud was an abuse of prosecutorial power and involved conduct that was prejudicial to the administration of justice.

The committee further found clear and convincing evidence that respondent's actions caused the respect and confidence due the office of the United States Attorney for the Western District to suffer in the Monroe, Louisiana area.

Finally, the committee found that the decision to indict Sheriff Toney in February 2012 and to arrest him resulted in loss of business and damage to the professional reputation of Mr. Stroud.

Based on these findings, the committee determined that respondent violated Rules 1.7(a)(2), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. The committee did not mention any of the other rule violations alleged in the formal charges.

The committee found the following aggravating factors present: a dishonest or selfish motive, multiple offenses, and substantial experience in the practice of law (admitted 1989). The committee found the following mitigating factors present: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, and imposition of other penalties or sanctions.

The committee did not specifically discuss the duties violated by respondent, her mental state, or the harm caused by her misconduct, nor did it identify the applicable baseline discipline. However, the committee did cite Standards 4.32 and 6.32 of the ABA's *Standards for Imposing Lawyer Sanctions*. Standard 4.32 provides suspension is generally appropriate when a lawyer knows of a conflict of

interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client. Standard 6.32 provides that suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes interference or potential interference with the outcome of the legal proceeding. The committee also cited *In re: Jordan*, 04-2397 (La. 6/29/05), 913 So. 2d 775, in which this court held that a prosecutor is "charged with a high ethical standard [and] entrusted with upholding the integrity of the criminal justice system by ensuring that justice is served for both the victims of crimes and the accused. … Any intentional deviation from the principle of the fair administration of justice will be dealt with harshly by this Court."

Considering the foregoing, the committee recommended that respondent be suspended from the practice of law for six months, followed by a one-year period of probation during which she should be required to obtain twenty hours of continuing legal education ("CLE") in ethics and twenty hours in professionalism, for a total of forty hours, by the end of 2017.

*Post-Hearing*

Following the issuance of the hearing committee's report, the ODC filed an objection to the committee's failure to address the applicability of Rule 3.8(d) of the Rules of Professional Conduct. The ODC also urged that the board revisit the sanction recommended by the committee. Respondent likewise objected to the report, contending that the committee failed to apply a clear and convincing standard in weighing the evidence, erred in its factual conclusions in two instances, and recommended a sanction that was too harsh.

On February 7, 2016, prior to any consideration of this matter by the disciplinary board, the ODC and respondent filed a pleading captioned "Joint

Stipulations and Memorandum by the Office of Disciplinary Counsel and Respondent." In this pleading, the parties agreed that respondent violated the Rules of Professional Conduct as charged. The parties also agreed that the appropriate sanction in this matter is a suspension of one year and one day, with all but six months deferred, subject to a one-year period of unsupervised probation with conditions, including the CLE obligations proposed by the hearing committee.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's findings of fact are supported by the evidence and are not manifestly erroneous. The parties stipulated to many of the facts prior to the hearing. Effect must be given to these stipulations unless they are withdrawn. *In re: Torry*, 10-0837 (La. 10/19/10), 48 So. 3d 1038. To the extent that additional facts, not stipulated, were found by the committee, the board adopted these facts as supported by the record. In addition to the factual allegations, after the hearing the parties stipulated that respondent violated Rules 1.7, 3.8(d), 8.4(a), 8.4(c), and 8.4(d). Likewise, these stipulations must be given effect. *Id.*

The board determined that respondent knowingly violated duties owed to her client, the public, and the legal system. Her assurances to Mr. Stroud relative to his client's indictment and arrest, and her phone call threatening the public arrest of Sheriff Toney, were improper. These communications harmed the relationship between Mr. Stroud and his client. Respondent's personal interest in keeping quiet her relationship with the FBI agent deprived her client, the United States through her superiors, of information they needed to make informed decisions relative to the representation of the government and disclosure obligations to defendants. Her misconduct led to the government's decision to relitigate the case against Councilmen Stevens and Gilmore, caused harm in the form of the additional

10

expenditure of resources to retry the case, and adversely impacted the government's tendered plea bargain offered to Sheriff Toney. The potential for harm also exists, as it is possible that the issue of the relationship may be raised in other cases prosecuted by respondent in which the FBI agent testified. Furthermore, her actions are the type that cause unfavorable opinion by the public towards the legal system and especially, the United States Attorney's Office in the Western District of Louisiana. The applicable baseline sanction in this matter is suspension.

The board agreed with the aggravating and mitigating factors found by the committee. Additionally, the board found remorse to be a mitigating factor. The board found the mitigating factors in this case far outweigh the aggravating factors, particularly the factors of character and reputation, imposition of other penalties or sanctions, and remorse.

The board then turned to an analysis of this court's prior jurisprudence. The board acknowledged that there is no Louisiana case law which directly addresses an intimate relationship between a government prosecutor and a law enforcement agent called as a witness. Instead, the board relied upon cases involving assistant district attorneys who received fully deferred suspensions with probation for engaging in conflicts of interest and conduct prejudicial to the administration of justice in their civil practices. *See In re: Caillouet*, 01-2461 (La. 11/9/01), 800 So. 2d 367, and *In re: Toups*, 00-0634 (La. 11/28/00), 773 So. 2d 709. The board also cited *In re: Ruffin*, 10-2544 (La. 1/14/11), 54 So. 3d 645, as an example of a prosecutor who used her position to threaten someone in order to further a personal interest. In that case, an individual had written a bad check to a friend of Ruffin's and owed the friend money. Ruffin threatened the individual with arrest and prosecution. For this misconduct, balanced by the mitigating factors present, the court imposed a six-month suspension, with all but thirty days deferred. Finally, the sole reported Louisiana case addressing a violation of Rule 3.8(d) is *In re: Jordan*, 04-2397 (La.

11

6/29/05), 913 So. 2d 775, in which the prosecutor was suspended for three months, fully deferred, subject to a one-year period of probation for failing to disclose exculpatory evidence in violation of Rule 3.8(d).

Considering these cases, and the numerous mitigating factors present in this matter, the board concluded that the appropriate sanction is a six-month suspension, fully deferred subject to a one-year period of probation during which respondent must obtain an additional ten hours each of continuing legal education in the areas of ethics and professionalism.[2] The board further recommended that respondent pay all costs and expenses of these proceedings.

The ODC filed an objection to the board's report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

---

[2] The board acknowledged that respondent and the ODC stipulated to a sanction which would require respondent to serve an actual period of suspension, but stated that a fully deferred suspension is consistent with the jurisprudence, and moreover, the board was not bound by the stipulation in making its sanction recommendation to the court.

The underlying facts of this case are largely undisputed. Essentially, respondent acknowledges that while employed as an AUSA, she commenced and maintained a personal, intimate relationship with an FBI agent. Although there is no indication that the agent's testimony was influenced or colored in any way by their personal relationship, respondent admits she failed to disclose the relationship during her prosecution of two Monroe city councilmen and the Ouachita Parish Sheriff. After the sheriff's counsel raised the possibility of the relationship, respondent was questioned by the United States Attorney and was not immediately and fully forthcoming. In addition, the disciplinary board found respondent made assurances to the sheriff's counsel relative to his client's indictment and arrest. This conduct, and her phone call threatening the sheriff's public arrest, were clearly improper. These communications harmed the relationship between the sheriff and his counsel. Based on these facts, the parties agree that respondent violated Rules 1.7, 3.8(d), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions.[3] In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and

---

[3] In the parties' briefs, there is considerable discussion as to whether respondent is bound by the stipulated sanction. While we have permitted the parties to enter into stipulations of fact and rule violations, we question the wisdom of allowing stipulations regarding sanctions in the context of a formal charge matter. The parties have an adequate procedure to propose sanctions to this court by filing a joint petition for consent discipline in this court. *See* Supreme Court Rule XIX, § 20. In any event, unlike the stipulations of fact and rule violations discussed in *In re: Torry*, 10-0837 (La. 10/19/10), 48 So. 3d 103, we now hold a stipulation by the parties as to sanctions is not binding on the hearing committee, the disciplinary board, or this court. Should the parties stipulate to a sanction in the course of a proceeding based on formal charges, the committee and the board may consider the stipulated sanction along with the other evidence but are in no way bound to accept it and remain free to formulate their own recommendation of discipline based on all relevant considerations.

mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

We have not previously had the opportunity to address directly the misconduct of a government prosecutor who maintained an intimate or romantic relationship with a law enforcement agent called as a witness. However, we have repeatedly held that public officials – and prosecutors in particular – are held to a higher standard than ordinary attorneys. *See In re: Bankston*, 01-2780 (La. 3/8/02), 810 So. 2d 1113 (an attorney occupying a position of public trust is held to even a higher standard of conduct than an ordinary attorney); *In re: Toups*, 00-0634 (La. 11/28/00), 773 So. 2d 709 (because the prosecutor is entrusted with great power and discretion in our system of justice, he is also charged with a high ethical standard). In formulating a sanction for respondent's misconduct, some general guidance can be drawn from cases dealing with conflicts of interest involving romantic entanglements. For example, the case of *In re: Ryland*, 08-0273 (La. 6/6/08), 985 So. 2d 71, is instructive. There the respondent entered into an intimate relationship with a client during the course of a domestic representation. The respondent was suspended for ninety days, fully deferred, considering that there was little or no actual harm. Furthermore, the respondent was not a prosecutor and did not commit any other violations of the Rules of Professional Conduct.

In a case involving both a conflict of interest as well as deception such as exists in this instance, the recent case of *In re: Bullock*, 16-0075 (La. 3/24/16), 187 So. 3d 986, is highly persuasive. The respondent failed to file a petition for damages within the prescriptive period and then took steps to hide her malpractice from the client when the duty owed was full disclosure. We determined that this conduct warranted a suspension for one year and one day, with all but six months deferred. There are strong parallels here inasmuch as respondent has a clear conflict of interest under Rule 1.7 that should have been disclosed to the government and to opposing

14

counsel in her pending cases. When the issue did arise, respondent was deceitful and falsely misrepresented the issue to her employer on not one, but two, separate occasions.

Respondent acknowledged in her prehearing stipulations that the relationship she had with the FBI agent could reasonably have given rise to a basis for questioning the interests and/or credibility of the agent by the defendants and should have been disclosed. Respondent stipulated prior to board panel argument that this conduct violated Rule 3.8(d). In *In re: Jordan*, 04-2397 (La. 6/29/05), 913 So. 2d 775, we imposed a fully deferred three-month suspension upon a prosecutor who failed to turn over exculpatory evidence to the defense in violation of Rule 3.8(d).

Finally, respondent stipulated that she used her position as an AUSA to threaten a criminal defendant she was prosecuting with arrest within his own office if he did not refrain from spreading "rumors" regarding her relationship with the FBI agent. This abuse of her authority as a prosecutor is similar in some respects to *In re: Ruffin*, 10-2544 (La. 1/14/11), 54 So. 3d 465. There, Assistant District Attorney Ruffin used her position to threaten with arrest and prosecution an individual who had written a bad check to her friend. We determined that the nature of the misconduct warranted a period of actual suspension and suspended Ruffin for six months, with all but thirty days deferred.

When taken cumulatively, including the multiple violations of the Rules of Professional Conduct and specifically considering respondent's dishonesty and misrepresentation to which she has stipulated, we find that the fully deferred suspension recommended by the board is not appropriate and that respondent must serve an actual period of suspension. We will impose a one year and one day suspension, deferring all but six months of the suspension in light of the substantial mitigating circumstances present. We further order that respondent serve a one-year period of unsupervised probation, during which she shall obtain an additional forty

hours of continuing legal education, with twenty hours each in the areas of ethics and professionalism.

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that C. Mignonne Griffing, Louisiana Bar Roll number 19601, be and she hereby is suspended from the practice of law for one year and one day. It is further ordered that all but six months of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for one year, subject to the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

16

SUPREME COURT OF LOUISIANA

No. 2017-B-0874

IN RE:  C. MIGNONNE GRIFFING

ATTORNEY DISCIPLINARY PROCEEDING

**JOHNSON, Chief Justice, concurs in the discipline assigned.**

**SUPREME COURT OF LOUISIANA**

**NO. 2017-B-0874**

**IN RE: C. MIGNONNE GRIFFING**

ATTORNEY DISCIPLINARY PROCEEDINGS

**Guidry, J.**, dissents and would suspend the respondent from the practice of law for a period of six months, fully deferred, subject to a one-year period of probation with conditions.