# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
February 9, 2021
Lyle W. Cayce
Clerk

No. 19-30702
CONSOLIDATED WITH
No. 19-30989

───────────

Priscilla Lefebure,

*Plaintiff—Appellee*,

*versus*

Samuel D'Aquilla, 20th Judicial District, individually
and in his official capacity as District Attorney,

*Defendant—Appellant*.

───────────

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-1791

───────────

Before Owen, *Chief Judge*, and Graves and Ho, *Circuit Judges*.
James C. Ho, *Circuit Judge*:

The allegations in this case are sickening. Priscilla Lefebure alleges that Barrett Boeker, her cousin's husband, raped and sexually assaulted her on multiple occasions at his home on the grounds of the Louisiana state prison where he serves as an assistant warden. Lefebure further alleges that Samuel D'Aquilla, the district attorney, conspired with Boeker and others—including Boeker's counsel, a relative of D'Aquilla's—to prevent her from

No. 19-30702

c/w No. 19-30989

seeking justice for these crimes.  It is undisputed that D'Aquilla declined to prosecute Boeker.  And according to Lefebure, he did not even bother to seriously investigate him.  In response, she filed this suit against D'Aquilla, as well as Boeker and others, on a variety of constitutional and statutory claims.

Under established precedent, however, we have no jurisdiction to reach her claims against D'Aquilla, because she has no standing under Article III of the Constitution to bring them.  As the Supreme Court has instructed, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  The district court theorized that *Linda R.S.* does not apply here, because Lefebure complains not about the lack of prosecution, but about the lack of investigation.  But we do not read *Linda R.S.* the same way.  To the contrary, *Linda R.S.* makes clear that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted *nor threatened with prosecution*."  *Id.* (emphasis added).

Not surprisingly, then, every court to our knowledge to have addressed this question prior to this case agrees that a crime victim may not challenge a prosecutor's failure to investigate or prosecute his perpetrator. Lefebure does not cite any authority to the contrary, either here or before the district court—indeed, she did not file a brief in this appeal.  Accordingly, we have no choice but to reverse and remand with instructions to dismiss the complaint for lack of subject matter jurisdiction as to D'Aquilla.

## I.

Forced to evacuate her home in Baton Rouge due to flooding, Lefebure resided temporarily with her cousin and her cousin's husband, Boeker.  Their home is located on the grounds of the Louisiana State Penitentiary, where Boeker serves as an assistant warden.

No. 19-30702
c/w No. 19-30989

Lefebure alleges that Boeker raped and sexually assaulted her on multiple occasions there.  First, he raped her in front of a mirror, where he made her watch, while telling her that no one would hear her scream.  Later, he sexually assaulted her with a foreign object, after picking the lock of the room where she was attempting to hide.  Afterward, she tried to lock the door again, but he again proceeded to pick the lock and blocked her escape.

Following these repeated assaults, Lefebure received a sexual assault examination, revealing bruises, redness, and irritation on her arms, legs, and cervix.  Boeker was arrested a few weeks later for second degree rape.  But no indictment or conviction followed.

According to Lefebure, D'Aquilla, the district attorney for Louisiana's 20th Judicial District, conspired with Boeker as well as West Feliciana Parish Sheriff J. Austin Daniel, and Boeker's defense counsel, a relative of the district attorney, to ensure that he would not be properly investigated for his crimes.  Specifically, she claims that D'Aquilla (1) refused to collect and examine the rape kit; (2) made handwritten notes on the police report highlighting only purported discrepancies in Lefebure's account of the events and presented that report to the grand jury; (3) declined to meet or speak with her about the alleged assaults before the grand jury proceeding; and (4) failed to call various witnesses who could have corroborated her version of the events.  She further alleges that they gave Boeker preferential treatment, low bond, and ultimately ensured that he would not be indicted for his alleged assault.

Lefebure filed suit against D'Aquilla and the others, seeking damages and declaratory and injunctive relief.  With respect to D'Aquilla, she brought various claims under (1) the Equal Protection Clause of the Fourteenth Amendment, as well as Article I, Section 3 of the Louisiana Constitution (Right to Individual Dignity); (2) the Due Process Clause of the Fourteenth Amendment, as well as Article I, Section 2 of the Louisiana Constitution

No. 19-30702
c/w No. 19-30989

(Right to Due Process); (3) 42 U.S.C. §§ 1983 and 1985 for civil conspiracy to violate civil rights; and (4) 42 U.S.C. § 1983 for abuse of process.

D'Aquilla filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for, respectively, lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, and asserted various defenses.

The district court granted in part and denied in part D'Aquilla's motion to dismiss. *Lefebure v. Boeker*, 390 F. Supp. 3d 729, 768 (M.D. La. 2019). It denied the motion to dismiss under Rule 12(b)(1), finding that Lefebure had standing. *Id.* at 746. It also dismissed some of her claims, and rejected many of D'Aquilla's asserted defenses as to her other claims. *Id.* at 747–50, 758, 763, 767–68.

The district court certified the order for interlocutory appeal under 28 U.S.C. § 1292(b). D'Aquilla moved in this court for leave to appeal from the interlocutory order, and we granted the motion.

On appeal, Lefebure made four requests to extend her briefing deadline, between June and August 2020. We granted each of those requests, but then denied her fifth request for an extension. In September, we gave her notice that she could submit a motion to file a brief out of time within ten days. She declined to respond to our request or file a brief in this appeal, so the case was submitted with only D'Aquilla's brief. Her decision not to submit a brief "does not preclude our consideration of the merits" of D'Aquilla's appeal. *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 464 (5th Cir. 2018). *Cf.* Fed. R. App. P. 31(c) (an appellee who does not file a brief forfeits the right to appear at oral argument).

We review questions of subject matter jurisdiction de novo. *Jones v. United States*, 625 F.3d 827, 829 (5th Cir. 2010).

## II.

It is well established, and the parties do not dispute, that a victim has no standing under Article III of the Constitution to bring suit to demand the prosecution of his perpetrator. The Supreme Court so held in *Linda R.S.* 410 U.S. at 619. And courts, including ours, have consistently enforced this same principle. Whether framed as a lack of standing or a lack of any right to sue as a matter of substantive law, courts consistently reach the same judgment as in *Linda R.S.*—that plaintiffs may not file suit to secure the prosecution of another person. *See, e.g., Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (affirming dismissal of a prison inmate's claim against the sheriff for failing to press criminal charges against correctional officers involved in an alleged assault because the plaintiff "does not have a constitutional right to have someone criminally prosecuted"). *See also, e.g., Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 901 (7th Cir. 2012) (en banc) (Easterbrook, C.J., concurring) (the victim "needs to show how he was injured by what the defendants did *to* him, rather than by what they didn't do to other people"); *Parkhurst v. Tabor*, 569 F.3d 861, 866 (8th Cir. 2009) ("federal courts have maintained the distinction in standing between those prosecuted by the state and those who would urge the prosecution of others"); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988) (rejecting claim that crime victims have "an enforceable right as a member of the public at large and as a victim to have the defendants criminally prosecuted").

Lefebure contends that this body of precedent should not bar her suit, because her asserted injury is not D'Aquilla's failure to prosecute but rather his failure to investigate Boeker. *See, e.g., Lefebure*, 390 F. Supp. 3d at 745 ("[Lefebure] seeks relief for the failure to investigate her claims, for the alleged conspiracy with the Sheriff not to investigate her claims, and for the alleged long-standing practice, policies and procedures that fostered the failure to investigate").

No. 19-30702
c/w No. 19-30989

We disagree. Her theory of the injury is the same: As in *Linda R.S.*, D'Aquilla deprived her of the opportunity to hold Boeker accountable through the criminal justice system.

In fact, Lefebure repeatedly emphasizes her desire to hold Boeker accountable throughout her complaint—and in particular, her desire to hold him accountable through the criminal justice system. *See* First Amended Complaint & Jury Demand at 2, 7, 16, 21–22, *Lefebure v. Boeker*, 390 F. Supp. 3d 729 (M.D. La. 2019) (ECF No. 37) (alleging that D'Aquilla and other officials conspired to ensure that Boeker "would not be held accountable for his actions," would be "protect[ed] . . . from prosecution," "would not be convicted of the alleged rapes," would "walk free," and would be "protect[ed] . . . from criminal liability"). *See also Lefebure*, 390 F. Supp. 3d at 745 (acknowledging that "the alleged failure to investigate was motivated by a preference in the prosecutorial outcome").

We see no reason why the logic of *Linda R.S.* would not readily apply here. *Linda R.S.* itself makes clear that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted *nor threatened with prosecution*." 410 U.S. at 619 (emphasis added). And other courts have likewise uniformly denied relief where the victim brought suit to challenge the failure to investigate the perpetrator. *See, e.g.*, *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."). *Cf. Sargeant v. Dixon*, 130 F.3d 1067, 1069–70 (D.C. Cir. 1997) (if a person has "an interest in 'being heard' by the grand jury," it is "only because" he has an "interest in seeing certain persons prosecuted"—which is "not legally cognizable within the framework of Article III" under *Linda R.S.*).

The district court accordingly erred in concluding otherwise.

* * *

Lefebure's story is one that is shared by too many survivors who have been doubly victimized by the horrifying crime of sexual assault—first by their assailants, and then again by a criminal justice system that fails to enforce the laws on the books. *See*, *e.g.*, *Pierre v. Vannoy*, 891 F.3d 224, 229 (5th Cir. 2018) (reversing district court for its "troubling" decision to release convicted child rapist without mentioning, let alone distinguishing, governing circuit precedent foreclosing release).

Moreover, Lefebure's story is particularly appalling because her alleged perpetrator holds a position of significance in our criminal justice system as an assistant prison warden. We expect law enforcement officials to uphold the law, not to violate it—to protect the innocent, not to victimize them. "Nothing is more corrosive to public confidence in our criminal justice system than the perception that there are two different legal standards—one for the powerful, the popular, and the well-connected, and another for everyone else." *United States v. Taffaro*, 919 F.3d 947, 949 (5th Cir. 2019) (Ho, J., concurring) (discussing lack of prison time for chief deputy sheriff in Jefferson Parish despite multiple criminal convictions).

It is no doubt cold comfort to Lefebure, then, that the legal principles we are forced to apply today present no barrier to bringing her own suit against her assailant—which she reportedly has already done. For surely she expected to have the support of her state's elected and appointed prosecutors, investigators, and other officials in her pursuit of justice. If her account is correct, then the system failed her—badly.

But none of this changes the fact that our court has no jurisdiction to reach her claims against the district attorney, who for whatever reason declined to help her. We have no choice but to reverse and remand with instructions to dismiss the complaint for lack of subject matter jurisdiction as to D'Aquilla.

JAMES E. GRAVES, JR., *Circuit Judge*, concurring, joined by HO, *Circuit Judge*:

I fully join the majority opinion, but I write to highlight the gravity of the allegations against the district attorney. We recognize that under Louisiana law, the district attorney is vested with vast prosecutorial discretion and "shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury." LA. CONST. art. V, § 26(B). This discretion extends to a determination of "whom, when, and how he shall prosecute." LA. CODE CRIM PROC. art. 61. Yet broad and even necessary[1] though that discretion may be, prosecutorial conduct should not be an obstacle to crime victims and their pursuit of justice.

If Lefebure's allegations are true, then she faced that obstacle here. The complaint alleges the following: Neither D'Aquilla nor anyone from his office ever met or spoke with Lefebure about the violent crimes she suffered; in fact, he told reporters that he was "uncomfortable" speaking with her. D'Aquilla and the sheriff refused to collect, examine, and present as evidence Lefebure's rape kit and sexual assault examination to the grand jury. Two investigating officers, the nurse who conducted the sexual assault examination, and an expert from the coroner's office that stored the rape kit were not called to testify before the grand jury as well, which is commonly done in other cases. Further, defense counsel was a relative of D'Aquilla, giving support to the allegation that the district attorney conspired with Boeker to thwart investigation and prosecution.

Louisiana has long held that "public officials—and prosecutors in particular—are held to a higher standard than ordinary attorneys." *In re*

---

[1] *See* Roger A. Fairfax, Jr., *Prosecutorial Nullification*, 52 B.C. L. REV. 1243, 1252–58 (2011) (explaining factors influencing a prosecutor's discretion, including resource limitations, law enforcement priorities, victim's needs or wishes, and perceived public interest).

*Griffing*, 17-0874 (La. 10/18/17), 236 So.3d 1213, 1221–22 (citing *In re Bankston*, 01-2780 (La. 3/8/02), 810 So.2d 1113, 1117–18). "Because the prosecutor is given such great power and discretion, he is also charged with a high ethical standard." *In re Toups*, 00-0634 (La. 11/28/00), 773 So.2d 709, 715–16. As "an administrator of justice, a zealous advocate, and an officer of the court," the prosecutor has the primary duty "to seek justice." ABA Standards for Criminal Justice 3-1.2 (a)–(b) (4th ed. 2017). A prosecutor "should act with diligence and promptness to investigate, litigate, and dispose of criminal charges, consistent with the interests of justice and with due regard for fairness, accuracy, and rights of the defendant, *victims*, and witnesses." *Id*. at 3-1.9(a) (emphasis added). In fact, the 20th Judicial District Attorney's Office (D'Aquilla's office) recognizes this responsibility to victims, as its mission statement prioritizes "provid[ing] comfort and restitution to those victims who have been harmed by criminal offenders."[2] Further, prosecutors "should not use other improper considerations, such as . . . personal considerations, in exercising prosecutorial discretion," and "should not permit [their] professional judgment or obligations to be affected by [their] personal . . . relationships." ABA Standards for Criminal Justice 3-1.6(a), 3-1.7(f).

Again, if Lefebure's allegations regarding the district attorney's conduct are true, then his handling of the matter was substandard and less than ethical. And by (allegedly) engaging in this course of conduct, D'Aquilla, who occupies a position of public trust, may have caused "inestimable harm to the public's perception of the legal profession." *Bankston*, 810 So.2d at 1117–18.

---

[2] 20th Judicial District Attorney's Office, http://www.felicianasda.org/ (last visited Jan. 27, 2021).