**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-50854

PATRICK MCCLURE; MAXIMUM ENTERTAINMENT LLC,

Plaintiffs - Appellants

v.

WILLIAM BIESENBACH, Lieutenant, San Antonio Police Department;
RUDY DAVILLA, San Antonio Code Compliance Supervisor; CITY OF SAN
ANTONIO,

Defendants - Appellees

Appeal from the United States District Court for the
Western District of Texas
USDC No. 5:04-CV-797

Before JONES, Chief Judge, and SMITH and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Before the court are claims of municipal liability and procedural due
process violations. Plaintiffs Patrick McClure and his company, Maximum
Entertainment LLC, sued Defendants William Biesenbach, Rudy Davilla[1], and
the City of San Antonio under 42 U.S.C. § 1983. After construing the first

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] This appellee's name is spelled "Davilla" on our briefing notice. Elsewhere it is spelled
"Davila." Either spelling refers to the same person.

amended complaint, the district court dismissed the municipal liability claim against San Antonio pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court then entered summary judgment on the procedural due process claim in favor of Biesenbach and Davilla. Extant claims were tried to a jury, which returned verdicts for Defendants. We now review only the district court's pre-trial rulings, and affirm.

I.

The following factual allegations are from the first amended complaint. Plaintiffs organized a concert to be held in San Antonio from Sunday, April 18, 2004 to Tuesday, April 20, 2004. They signed several well-known bands, leased a large outdoor venue, recruited a major sponsor, hired engineers and architects to design the stage and sound systems, and obtained an event permit from the City of San Antonio. On the first night of the concert, several citizens made noise complaints. Officers of the San Antonio Police Department (SAPD) responded, noise levels were adjusted, and the concert proceeded. The next morning, April 19, City Councilman Christopher "Chip" Haass called Biesenbach, an SAPD officer, to express concern about noise levels. Biesenbach visited the concert site and told sound engineer Carlos Garcia that the SAPD would carefully monitor the situation that night, including reviewing permits and enforcing noise ordinance violations.

At 5:00 p.m. on April 19, Biesenbach returned to the venue, accompanied by Davilla, who was Supervisor of the Abatement Patrol Division of the City Code Compliance Department. Biesenbach and Davilla then "presided over an enforcement effort so full of objectively unreasonable actions, improprieties and apparent bias that one could only conclude that the officers' objective was to shut-down the concert." Specifically, they enforced a 70 decibel noise limit applicable to areas zoned "business" under San Antonio's noise ordinance. However, Plaintiffs say (1) their permit exempted them from noise limits, or (2)

2

the noise limit was 72 decibels, because the area was zoned "industrial." Davilla allegedly failed to measure noise levels in accordance with the sound ordinance and proper operating procedures. Biesenbach and Davilla engaged in bullying and intimidation by showing up with between 15 and 30 law enforcement officers, threatening staffers and band members with arrest, and telling performers and patrons that the show would not go on.

The first band began to play at 5:35 p.m. Around 6 p.m., Biesenbach asked the sound engineer whether the volume could be turned down. The engineer replied that adjustments would have to be made by the performers on stage after the song was finished. Biesenbach said: "OK – this is the last song – shut it down!" Plaintiffs tried to gain a reprieve. They called City Councilman Ron Segovia, who urged Biesenbach to be lenient, but he did not budge. The performers packed up and left. While the final evening of the concert took place indoors, the shut down led to hundreds of thousands of dollars in lost profits, and destroyed McClure's credit and reputation as a music promoter.

The first amended complaint alleged that the City of San Antonio, Biesenbach and Davilla deprived Plaintiffs of procedural due process, and that the deprivations "were effected pursuant to City 'policy, practice and/or custom.'" Plaintiffs also pleaded a deprivation of First Amendment rights, a taking under state law, tortious interference with business relationships, and estoppel. All Defendants moved for dismissal or summary judgment. The court granted San Antonio's motion to dismiss, noting: "Plaintiffs do not allege that Biesenbach and Davilla acted in accordance with City policy" when they cancelled the concert. Rather, Plaintiffs said Biesenbach and Davilla altogether disregarded the event permit and the City's noise ordinance. Moreover, Plaintiffs did not allege that the City condoned Biesenbach's and Davilla's actions. Neither the complaint from Haass nor Segovia's abortive effort to keep the concert going was plausibly alleged to be an official policy. The court reasoned that Texas municipalities

create policy through their governing bodies, not the isolated statements or actions of individual councilmen.

After limited discovery, the court granted summary judgment in favor of Biesenbach and Davilla on Plaintiffs' procedural due process claims. Plaintiffs asserted that Biesenbach and Davilla had acted in a random and unauthorized manner; thus, their conduct was not foreseeable or traceable to a state procedure. Plaintiffs also failed to show that pre-deprivation process would have helped them. The court held that Biesenbach and Davilla were entitled to qualified immunity because Plaintiffs failed to show (1) that their allegations, if true, established a violation of a clearly established right; and (2) that Defendants' conduct was objectively unreasonable in light of clearly established law at the time of the incident.

## II.

We first hold that the district court properly granted San Antonio's motion. To withstand dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We review the dismissal de novo, accepting well-pleaded facts as true and viewing them in the light most favorable to the plaintiff. *Lindquist v. City of Pasadena*, 525 F.3d 383, 386 (5th Cir. 2008). The allegations must "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

A municipality may be held liable under § 1983 if its policy or custom causes a constitutional tort. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999). A complaint must show that, "through its deliberate conduct, the municipality was

the 'moving force' behind the injury alleged." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405. Thus, to state a claim, Plaintiffs must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation. *See, e.g.*, *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Plaintiffs complain of two distinct policies. First, they say the City's noise ordinance is defective because it does not give pre-deprivation process. However, the first amended complaint states that Biesenbach and Davilla acted arbitrarily and capriciously. The factual averments were that the officers ignored the terms of the noise ordinance, not that the ordinance was constitutionally defective. Only after the court dismissed the municipal liability claim did Plaintiffs develop this thesis. Plaintiffs did not seek to amend their complaint in order to re-urge the claim; therefore, we will not consider it on appeal. *Cf. id.*, 130 F.3d at 167. If the officers' conduct was random, unauthorized, and in derogation of the noise ordinance, one cannot say that the concert was stopped pursuant to the officially promulgated policies of San Antonio.

Plaintiffs next say Biesenbach and Davilla acted pursuant to a *de facto*, selective zero-tolerance policy, which required them to shut the concert down at any cost upon receiving the complaint from Councilman Haass. However, the first amended complaint fails to plausibly articulate this theory. The complaint says Biesenbach first visited the concert site "in an apparent response to a call from [Haass]." The complaint later makes a sweeping statement that, "[u]pon information and belief, these [due process] deprivations were effected pursuant to City 'policy, practice and/or custom.'" This is Plaintiffs' sole reference to a

policy or custom. Never do Plaintiffs state that the call from Councilman Haass was "deliberate conduct" on behalf of San Antonio and was the "moving force" behind an extra-legal, zero-tolerance enforcement policy. *Cf. Brown*, 520 U.S. at 404. At best, Plaintiffs have provided a "formulaic recitation of the elements of a cause of action," or "a legal conclusion couched as a factual allegation," which fails to state allegations raising the right to relief above the level of speculation. *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The district court did not err in dismissing § 1983 claims against the City of San Antonio.

## III.

We now hold that the district court properly granted summary judgment on the procedural due process claim. Our standard of review is de novo. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The evidence and justifiable inferences therefrom are to be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.

"Government officials acting within their discretionary authority are immune from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mack v. City of Abilene*, 461 F.3d 547, 555 (5th Cir. 2006). When an official sued for damages under § 1983 raises the defense of qualified immunity, the plaintiff has the burden of rebutting the defense. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). We first inquire whether the evidence presented can sustain a finding that the

defendant violated plaintiff's constitutional rights. *Id.* "If not, no further inquiry is needed and the defendant is entitled to qualified immunity." *Id.*

When confronted with a claim for deprivation of procedural due process, we first ask whether the state has deprived the individual of a liberty or property interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). We then ask whether procedures accompanying such deprivation were unconstitutional. *Id.* A procedural due process claim does not lie where the deprivation results from the unauthorized, intentional conduct of a state employee and the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Parratt v. Taylor*, 451 U.S. 527, 542-43 (1981) (no procedural due process claim available where deprivation results from official's negligence), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). It does not matter whether the *official* can foresee a deprivation or provide some form of process: "[t]he controlling inquiry is solely whether the *state* is in a position to provide for predeprivation process." *Hudson*, 468 U.S. at 534 (emphasis added). Post-deprivation process is adequate if it allows the prospect of compensation for the loss suffered. *See Parratt*, 451 U.S. at 543-44.

### B.

Plaintiffs presented evidence of a property interest in holding the concert, of which Defendants deprived them under color of law. The first element of a procedural due process claim is fulfilled for Rule 56 purposes. The salient question is whether the process afforded to Defendants is constitutionally deficient. *See Thompson*, 490 U.S. at 460. We conclude that Plaintiffs' claim fails under the authority of *Parratt* and *Hudson*. The operative pleading alleged that Biesenbach and Davilla "preside[d] over an enforcement effort so full of objectively unreasonable actions, improprieties and apparent bias that one could only conclude that the officers' objective was to shut-down the concert." In our

7

view, such allegations depict "random and unauthorized" conduct which was "not a result of some established state procedure." *See Parratt*, 451 U.S. at 541.

Plaintiffs' attempts to circumvent *Parratt* and *Hudson* come up short. Plaintiffs say *Hudson* is not on point because this case does not concern the rights of prisoners, or a scenario where meaningful pre-deprivation process is available. These observations are misguided. The pleadings portray the officers' acts as rogue conduct. This is antithetical to a challenge to the adequacy of an established procedure. Plaintiffs next point to provisions of San Antonio's noise ordinance which empower officials to issue citations, make arrests, or seek administrative stop orders. Prior to the court's ruling, Plaintiffs never said these processes would have been unconstitutional had they been followed. Moreover, on appeal, Plaintiffs still aver that Defendants "did not avail themselves" of these mechanisms. Because San Antonio cannot anticipate when officers will ignore the terms of its ordinance, it is nonsense to say that more exacting process would have prevented the deprivation. *See Hudson*, 468 U.S. at 533-34; *Zinermon v. Burch*, 494 U.S. 113, 137-38 (1990). Plaintiffs next urge that even if Defendants had followed these rules, they would have been insufficient in light of the "shadow enforcement policy and scheme" triggered by the call from Councilman Haass. However, Plaintiffs did not plead this theory in the first amended complaint or provide evidence of an extralegal policy before the court's entry of summary judgment. The argument is forfeited.[2]

---

[2] Even were the court to notice Plaintiffs' argument, when taken to its logical conclusion, it is absurd. Plaintiffs in essence argue that pre-deprivation process is always required before officers can abate a noise nuisance, or that "zero tolerance" noise policies are *per se* unconstitutional. However, the mandates of due process are inherently flexible, and the courts must balance public and private interests. *See Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). The interest of preserving public order, peace and quiet cannot always be trumped by a private citizen's desire to "rock on" and rattle the neighborhood's windows on a school night. *See Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause.").

Finally, post-deprivation process offered Plaintiffs a chance to seek compensation for the deprivations. *See Parratt*, 451 U.S. at 543-44. In *Bennett v. Monette*, 507 F. Supp. 2d 514, 516 (E.D.N.C. 2007), a sheriff shut down an outdoor concert after receiving complaints about noise levels and profanity. The district court granted the sheriff's motion for summary judgment on a procedural due process claim because North Carolina law provided a post-deprivation remedy: a claim for tortious interference with a contract. *Id.* at 518-19. Here, Plaintiffs pursued several claims arising from the shut-down of their concert. After discovery and a lengthy trial on the merits, the jury returned defense verdicts. While Plaintiffs did not prevail, they had their day in court.

In sum, Plaintiffs' claims were premised not on inadequacy of procedure, but rather, state actors' unforeseeable failure to abide by procedure, for which post-deprivation remedies were available. The allegations run squarely into the *Parratt/Hudson* doctrine, and for this reason do not state a claim for deprivation of procedural due process. Because there was no violation of procedural due process rights, Biesenbach and Davilla were entitled to summary judgment and qualified immunity on this claim. *See Johnson*, 379 F.3d at 301.

IV.

Plaintiffs' first amended complaint failed to state a claim under § 1983 against the City of San Antonio. Plaintiffs also failed to present a genuine issue of fact as to a deprivation of procedural due process rights, entitling Biesenbach and Davilla to qualified immunity and summary judgment. The district court's rulings are in all respects

AFFIRMED.