3. Qualified Immunity - Individual Capacity Claims
As discussed above, Plaintiff failed to address the DA's individual liability under the Equal Protection Clause, the only viable federal constitutional claim asserted, in her Opposition memoranda, although she presented argument on this issue at the oral argument.[131] Plaintiff's only Opposition response to the DA's assertion of qualified immunity was based on her Due Process/access to the Courts claim, which the Court has held is not a viable constitutional violation under the facts alleged.
Fundamental fairness requires that the Plaintiff be permitted leave to conform her Opposition pleading to the oral arguments presented. Accordingly, because Plaintiff is hereby ordered to submit a Rule 7(a) Response to address the DA's individual capacity liability under the Equal Protection Clause and respond to his assertion of the defense of qualified immunity under the deadlines set forth below.
4. Official Capacity Claims
A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[132] Accordingly, the claims against the DA in his official capacity are, in effect, claims against the municipal entity he represents, which is the West Feliciana Parish District *754 Attorney's Office.[133] A plaintiff asserting a Section 1983 claim against a municipal official in his official capacity or a Section 1983 claim against a municipality "must show that the municipality has a policy or custom that caused his injury."[134] To establish an "official policy," a plaintiff must allege either of the following:
1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[135]
To state a claim for municipal liability, the policymaker must have final policymaking authority.[136] "[W]hether a particular official has final policymaking authority is a question of state law. "[137] Moreover, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff" for the necessary determination to be made on the policy's relative constitutionality.[138]
Although "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity,"[139] absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under Section 1983.[140] A municipality cannot be held liable under Section 1983 for the tortious behavior of its employees under a theory of respondeat superior.[141] "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[142] However, a plaintiff may establish a policy or custom based on isolated decisions made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.[143]
*755 To state a claim, plaintiffs "must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation."[144] Liability for failure to promulgate a policy requires that the defendant acted with deliberate indifference.[145] "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[146] "Deliberate indifference is a high standard-'a showing of simple or even heightened negligence will not suffice.' "[147] A mere showing of generalized risk is insufficient to establish deliberate indifference; rather, the plaintiff must show that a reasonable policy maker would conclude that the constitutional deprivation that occurred was a plainly obvious consequence of his decision.[148]
The Supreme Court has expressly prohibited the application of a heightened pleading standard to Section 1983 claims against municipalities.[149] Rather, a plaintiff need only comply with notice pleading requirements by presenting a "short and plain statement of the claims showing that the pleader is entitled to relief."[150] While boilerplate allegations of inadequate municipal policies or customs are generally sufficient,[151] a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[152]
The following allegations in Plaintiff's First Amended Complaint pertain to Plaintiff's claims asserted against the DA in his official capacity:[153]
22. On information and belief, the West Feliciana Parish District Attorney's Office does not have a policy requiring rape kits and sexual assault examinations to be picked up and reviewed or sent to the state crime lab for testing.
23. On information and belief, at the time of the assaults and through June 2017, the West Feliciana Parish Sheriff's Office did not have a policy requiring rape kits and sexual assault examinations *756 to be picked up and reviewed or sent to the state crime lab for testing.
24. Rape kits and sexual assault examinations are known to be evidentiary linchpins in sexual assault cases and former district attorneys, defense attorneys, and victim's advocates agree that proper investigation always includes review of the rape kit and assault examination. They further agree that departmental protocol in both law enforcement and district attorney's offices should require examination and analysis of the kit or exam. Even in cases where DNA testing will not be determinative of whether an assault occurred.
25. As retired East Baton Rouge assistant district attorney Sue Bernie told reporters, "[i]f there's a rape exam done, I can't imagine not looking at the sexual assault exam." East Baton Rouge Coroner Beau Clark noted that when the cops get the kit can change (from case to case), but they always come get the kit and they're the ones that submit it to the crime lab."
......
41. Defendant SAMUEL D. D'AQUILLA is the present District Attorney of the 20th Judicial District, a position he has held since 2002. Defendant D'AQUILLA is sued in his official and personal capacity. Defendant D'AQUILLA directly and in conspiracy with other defendants deprived Plaintiff of her constitutional rights.
....
84. During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Ms. Lefebure's constitutional rights to equal protection, due process, and a property right in her rape kit.
85. Defendants D'Aquilla and Austin are the elected and effective policy makers for the District Attorney's Office and the Sheriff's Department, respectively.
....
89. At all relevant times, Defendants D'Aquilla and Austin acted individually, officially, and under color of law.
90. Defendants D'Aquilla and Austin knew that Ms. Lefebure had provided evidence of sexual assault and further knew that neither Defendant was taking steps to properly investigate her allegations.
91. Defendants D'Aquilla and Austin had a duty to diligently investigate the allegations and to collect the rape kit, submit it to the crime lab for examination, and review it and the sexual assault examination as part of their own investigation.
92. Defendants D'Aquilla and Austin acting individually and together conspired to and engaged in a course of conduct that deprived Ms. Lefebure of her constitutional property right in her DNA samples and rape kit, her right to seek redress in the courts, and of her rights to equal protection and due process by failing to investigate the accused and failing to pick up, analyze, examine, or submit rape kit and/or sexual assault examination evidence.
93. Defendants D'Aquilla and Austin are the elected and effective policy makers for the District Attorney's Office and the Sheriff's Department, respectively.
94. With deliberate indifference Defendants D'Aquilla and Austin failed to draft or implement procedures in either the Sheriff's Department or the District Attorney's Office to ensure proper investigation of rape cases and proper review, examination, collection, and handling of rape kits and sexual assault examinations.
*757 95. Defendants D'Aquilla and Austin's deliberate, and willful and wanton conduct created a danger of an increased risk of harm to Plaintiff and other victims of sexual assault, which are disproportionately women, by failing to investigate sexual assault crimes, by fostering an environment whereby perpetrators of sexual assault are allowed to prey on victims without fear of investigation by the West Feliciana Sheriff's Department or District Attorney.
96. On information and belief, Defendant Boeker knew of Defendant D'Aquilla's longstanding refusal to properly investigate sexual assault crimes against women and/or female identified individuals.
97. At all relevant times, Defendants D'Aquilla and Austin's conduct was intentional, under color of law, and motivated by Plaintiff's gender.
98. On information and belief, Defendants have a history of discriminating against women and/or individuals who identify as female. Defendants have failed to investigate or take seriously reports of sexual assault from women and generally treat these allegations with less priority than other crimes not involving sexual assaults against women.
99. Defendants D'Aquilla and Austin, acting individually and collectively, had the duty and ability to prevent the violation of Ms. Lefebure's constitutional rights, but failed to do so. Indeed, their acts lead to the direction violation of Ms. Lefebure's rights.
100. Defendants D'Aquilla and Austin's conduct violated the Fourteenth Amendment's promise of equal protection of the laws and 42 U.S.C. section 1983.
101. As a direct and proximate result of Defendants D'Aquilla and Austin's actions, omissions, policies, practices and customs, Plaintiff was denied the rights afforded to her by the state and federal constitutions.
....
103. A departmental policy established or enacted by either Defendant D'Aquilla or Defendant Austin in their respective municipal organizations requiring collection and examination of rape kits would have prevented plaintiff's injury, and extreme emotional pain and suffering.
....
107. Defendants D'Aquilla and Austin had a duty to diligently investigate the allegations and to collect the rape kit, submit it to the crime lab for examination, and review it as part of their own investigation.
108. With deliberate indifference Defendants D'Aquilla and Austin failed to implement procedures in either the Sheriff's Department or the District Attorney's Office to provide for proper investigation of rape cases and proper review, examination, collection, and handling of rape kits and sexual assault examinations.
....
111. Defendants D'Aquilla and Austin's deliberate indifference and willful and wanton behavior created a danger and increased risk of harm by sexual assault.
112. Defendants D'Aquilla and Austin's conduct violated the Fourteenth Amendment's promise of substantive due process and 42 U.S.C. section 1983.
113. As a direct and proximate result of Defendants D'Aquilla and Austin's actions, omissions, policies, practices and customs, Plaintiff was denied the rights afforded to her by the state and federal constitutions.
114. Defendants violated Plaintiff's civil rights by having an express policy to not collect evidence or rape kits and/or *758 to not investigate when a female or female-identified person makes a rape or sexual assault allegation. This policy, when enforced, caused a constitutional deprivation to Plaintiff. Even if Defendants' conduct did not rise to the level of an express policy, the practice of failing to properly collect and review rape kits and/or the practice of failing to investigate sexual assault allegations by women was so widespread and/or custom that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.
115. Defendants D'Aquilla and Austin are the elected and effective policy makers for the District Attorney's Office and the Sheriff's Department, respectively. Plaintiff's constitutional injuries inflicted by Defendants were caused by individual's with final policymaking authority in West Feliciana Parish, the West Feliciana Parish Sheriff's Office, and/or the West Feliciana Parish District Attorney's Office.
a. Eleventh Amendment Sovereign Immunity
Notwithstanding the DA's strained attempt at arguing that an official capacity claim against him is barred by Eleventh Amendment sovereign immunity,[154] the Fifth Circuit has held to the contrary in several cases. The law is well-settled that district attorney offices in Louisiana are local government entities and thus not entitled to Eleventh Amendment sovereign immunity.[155]
b. Absolute Immunity
The Court finds that the DA is likewise not immune from an official capacity suit based on the defense of absolute prosecutorial immunity. In Burge v. Parish of St. Tammany , the Fifth Circuit held that "the district court erred in granting summary judgment for the District Attorney in his official capacity on the basis of his absolute prosecutorial immunity because that form of personal or individual immunity is not available in an official capacity suit."[156] The Burge court held:
We conclude that the District Attorney is not entitled to have the official capacity suit dismissed for either of the grounds used by the district court. Instead, the crucial issues appear to be whether the District Attorney failed to establish adequate policies, procedures or regulations to ensure adequate training and supervision of employees with respect to the government's Brady responsibility; if so, whether the need to control the agents of the government was so obvious, and the inadequacy of the existing practice so likely to result in the violation of constitutional rights, that the District Attorney can reasonably be said to have been deliberately indifferent to the need; and, if so, whether the District Attorney's deliberate indifference and failure to establish such policies, procedures, or regulations caused Burge's constitutional injury.
*759 Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent. Monell , 436 U.S. at 691 n. 55, 98 S.Ct. 2018. Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit , 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).[157]
In Burrell v. Adkins , the plaintiffs brought a Section 1983 lawsuit against the former and current District Attorneys of Union Parish, claiming that the District Attorneys had, inter alia , caused the plaintiffs to be falsely arrested and imprisoned, deliberately withheld Brady material, and maintained an official policy "designed to facilitate and condone his office's non-disclosure of Brady material to criminal defendants, in violation of plaintiffs' constitutional rights in this case."[158] The court explained the standard applicable to the plaintiffs' Monell claims:
Municipalities cannot be held liable for constitutional torts under Section 1983 on a respondeat superior theory, but they can be held liable when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. Burge , 187 F.3d at 471, citing Monell , 436 U.S. at 689, 98 S.Ct. at 2018. Thus, a plaintiff seeking to impose liability on a municipality under Section 1983 is required to identify a municipal policy, or custom, that caused the plaintiff's injury. Board of Cty. Comm'rs of Bryan Cty. v. Brown , 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). The "official policy" requirement may be proven in at least three different ways: (1) when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy, (2) where no official policy was announced or promulgated but the action of the policymaker itself violated a constitutional right; and (3) even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need. Burge , 187 F.3d at 471, and cases cited therein.
Relying heavily on Burge , the court stated that "[a] district attorney is the independent and final official policymaker for all administrative and prosecutorial functions of his office."[159] The court noted that "the only issue before the court is whether the Brady violations were committed pursuant to 'official policy.' "[160] The court ultimately found that:
Since former District Attorney Adkins was found to have been directly involved in the alleged Brady violations, plaintiffs have satisfied the requirements of Monell by proving that actions of the policy maker, which represented official policy, violated their constitutional rights. Thus, the real party in interest in this suit against Adkins and Levy in their official capacities, the office of the District Attorney *760 of Union Parish (currently held by Levy), is liable to plaintiffs.[161]
Although the Burrell decision was addressing a case at the summary judgment stage, the holding demonstrates that district attorneys are not absolutely immune from Monell liability where it is found that a policy or custom directly implemented by a district attorney caused constitutional injury. Accordingly, the DA is not shielded from Monell liability by absolute prosecutorial immunity. The Court now turns to a discussion of the elements of Plaintiff's Monell claims.
c. Policymaker
It is undisputed that DA D'Aquilla is a policymaker. Under Louisiana state law, a district attorney "shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury."[162] Accordingly, DA D'Aquilla is the policymaker with final policymaking authority for the West Feliciana Parish District Attorney's Office.
d. Official Custom or Policy
Plaintiff must plead sufficient facts to establish the existence of an official policy or custom. An "official policy" may be established in one of three ways: (1) "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy; (2) where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself; and (3) even where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker ... can reasonably be said to have been deliberately indifferent to the need.' "[163] From the Plaintiff's Amended Complaint , it appears her allegations fit within the second and third categories.
Specifically, Plaintiff alleges that, on information and belief, the West Feliciana Parish District Attorney's Office does not currently, nor did it at the time of the alleged assaults and through June 2017, have a policy requiring rape kits and sexual assault examinations to be picked up and reviewed or sent to the state crime lab for testing.[164] Plaintiff further alleges that, with deliberate indifference, DA D'Aquilla failed to draft or implement procedures in the District Attorney's Office to ensure proper investigation of rape cases and proper review, examination, collection, and handling of rape kits and sexual assault examinations.[165] Plaintiff also alleges that, on information and belief, Defendant Boeker knew of DA D'Aquilla's "long-standing refusal to properly investigate sexual assault crimes against women and/or female identified individuals,"[166] and Defendants "have a history of discriminating against women and/or individuals who identify as female. Defendants have failed to investigate or take seriously reports of *761 sexual assault from women and generally treat these allegations with less priority than other crimes not involving sexual assaults against women."[167] Finally, Plaintiff alleges that "[a] departmental policy established or enacted by ... Defendant D'Aquilla ... in their respective municipal organizations requiring collection and examination of rape kits would have prevented plaintiff's injury, and extreme emotional pain and suffering."[168]
Additionally, Plaintiff has alleged that DA D'Aquilla directly participated in the allegedly unconstitutional conduct. Plaintiff alleges that: the DA refused to examine or pick up her rape kit;[169] his mark-up of the police report highlighted only Plaintiff's possible discrepancies and cast doubt only on Plaintiff;[170] neither the DA nor any member of his staff met with Plaintiff in person prior to the grand jury hearing, nor did they ever speak to her about the alleged assaults;[171] at the grand jury hearing, the DA did not call the police officers who investigated the case or the nurse who conducted Plaintiff's sexual exam, and no expert from the coroner's office was called to testify about the rape kit;[172] the DA attempted to proceed to the grandy jury hearing without Plaintiff's testimony after he reneged on a promise to her lawyer that he would give her a continuance to prepare;[173] after a no true bill, the DA told reporters that the issue in the case was credibility and there were no photos or witness cooperation;[174] the DA told reporters he did not pick up or examine the rape kit because it was unnecessary because it would not speak to the issue of consent;[175] the DA told reporters that Defendant Boeker claimed it was consensual but "kind of rough" sex, a simple credibility call;[176] days after a news station reported that Plaintiff's rape kit was never retrieved or examined, the DA told the Advocate that his office had called the coroner's office and asked for the rape kit multiple times;[177] the DA told reporters that he presents everything in his file every time there is a grand jury;[178] and the DA met with Boeker and his attorney, who is related to the DA, after his arrest[179] and conspired with other Defendants, including Plaintiff's alleged rapist, to ensure that Boeker would not be investigated for rape.[180]
These very specific factual allegations dispel the DA's argument that Plaintiff's allegations are conclusory or boilerplate. The Court must accept Plaintiff's allegations as true for the purpose of this motion, and Plaintiff's factual allegations are specific and, in many instances, purport to be quotes given to the media. Plaintiff is not required to prove her case at the Rule 12(b)(6) stage, and the Court finds that her claim that it was policy or customary practice for the DA to fail to investigate or give credence to reports of sexual assault by women is plausible under the facts pled.
*762 Further, the facts pled, if proven, would constitute deliberate indifference rather than mere negligence on the part of the DA.
e. Moving Force Behind Constitutional Violations
The DA maintains that Plaintiff has failed to state a claim because she has not alleged a constitutional violation. Plaintiff claims that the DA's conduct and policy violated her constitutional rights to equal protection and due process/access to the courts. The Court has determined as set forth above that Plaintiff has alleged a constitutional violation under the Equal Protection Clause.
f. Equal Protection Clause[181]
Plaintiff alleges that the DA's
deliberate, willful, and wanton conduct created a danger of an increased risk of harm to Plaintiff and other victims of sexual assault, which are disproportionately women, by failing to investigate sexual assault crimes, by fostering an environment whereby perpetrators of sexual assault are allowed to prey on victims without fear of investigation by the West Feliciana Sheriff's Department or District Attorney.[182]
Plaintiff further alleges, on information and belief, that Defendant Boeker knew of the DA's "longstanding refusal to properly investigate sexual assault crimes against women and/or female identified individuals."[183] Plaintiff claims that Defendants' conduct was purposeful and motivated by Plaintiff's gender.[184] Plaintiff also alleges, on information and belief, that Defendants have a history of discriminating against women and/or individuals who identify as female in that Defendants have failed to investigate or take seriously reports of sexual assault from women and generally treat these allegations with less priority than other crimes not involving sexual assaults against women.[185] Finally, Plaintiff claims that Defendants violated Plaintiff's civil rights
by having an express policy to not collect evidence or rape kits and/or to not investigate when a female or female-identified person makes a rape or sexual assault allegation. This policy, when enforced, caused a constitutional deprivation to Plaintiff. Even if Defendants' conduct did not rise to the level of an express policy, the practice of failing to properly collect and review rape kits and/or the practice of failing to investigate sexual assault allegations by women was so widespread and/or custom that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.[186]
As set forth above, to sustain a gender-based equal protection challenge, a plaintiff must show "(1) the existence of a policy, practice, or custom of law enforcement to provide less protection to victims of domestic assault than to victims of other assaults; (2) that discrimination against women was a motivating factor; and (3) that the plaintiff was injured by the policy, custom or practice."[187] Plaintiff allegations as detailed above satisfy this three-part *763 test. However, the Court finds that Plaintiff has failed to allege a "class of one" cause of action, which she pleads in the alternative. To state a class of one equal protection claim, a plaintiff must offer a comparator she contends is similarly situated, but treated more favorably for no rational purpose.[188] Plaintiff has not alleged a similarly situated comparator. In accordance with the Court's statements at the oral argument, Plaintiff will be granted leave to amend on this issue.
Accordingly, the DA's Motion to Dismiss official capacity claims asserted against him is DENIED as to Plaintiff's Equal Protection claim but is GRANTED as to all other official capacity claims and Plaintiff's class of one Equal Protection claim, subject to leave to amend.
E. 42 U.S.C. §§ 1983 & 1985 (2) and (3) Civil Conspiracy Claims
"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[189] Regarding the first element: "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act."[190] "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss."[191] "[M]ore than a blanket of accusation is necessary to support a § 1983 claim."[192] Plaintiff must make "specific allegation[s] of fact tending to show a prior agreement has been made."[193]
Nevertheless, a Section 1983 conspiracy "claim need not [meet] a 'probability requirement at the pleading stage; [plausibility] simply calls for enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.' "[194] Plaintiff's "facts, when 'placed in a context ... [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.' "[195]
As to the second element, "[r]egardless of whether or not [a defendant's] actions alone actually caused a constitutional violation, liability can still be imposed on him through his alleged membership in the conspiracy."[196] That is, "[a] conspiracy allegation under § 1983 allows a plaintiff to 'impose liability on all of the defendants without regard to who committed *764 the particular act.' "[197]
"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.' "[198] For example, "in a case alleging both Fourth Amendment violations and a § 1983 conspiracy, the proper order of review is first whether Plaintiffs have alleged a constitutional violation that is objectively unreasonable in light of clearly established Fourth Amendment law, and only if that is the case should the court then consider whether Plaintiffs have alleged a conspiracy."[199] Thus, in Hale , the Fifth Circuit found that, because all of the alleged conspirators were entitled to qualified immunity on plaintiff's First Amendment claim, the conspiracy claim was not actionable.[200]
The Court finds that Plaintiff has alleged a viable constitutional violation of the Equal Protection Clause; thus, the Court must consider whether Plaintiff has sufficiently pled facts to state a claim for a Section 1983 civil conspiracy claim.
Plaintiff has also asserted a civil conspiracy claim under 42 U.S.C. § 1985(2) and (3). " Section 1985 prohibits a conspiracy to interfere with civil rights."[201] In order to state a 42 U.S.C. § 1985 claim, a plaintiff must allege the following: "(1) a conspiracy by the defendants, (2) with a purpose of depriving the plaintiff of equal protection of the laws or equal privileges and immunities under the law, (3) a purposeful intent to discriminate, (4) action by the defendants under color of state law or authority, and (5) injury to the person or property of the plaintiff or his deprivation of a right or privilege as a citizen of the United States resulting from actions in furtherance of the conspiracy."[202] Additionally, the plaintiff must assert "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[203]
The district court for the Northern District of Texas explained how the Fifth Circuit and the Supreme Court have interpreted 42 U.S.C. § 1985(2) and (3) :
The first clause of § 1985(2) "prohibits conspiracies to deter witnesses from attending court or testifying, punishing witnesses who have so attended or testified, or injure jurors." Bryant v. Military Dep't of Miss. , 597 F.3d 678, 687 n. 6 (5th Cir. 2010). The clause has been read as protecting any party, witness, or juror from intimidation regardless of any racial animus on the part of the defendant. Montoya , 614 F.3d at 149 (citing Kush v. Rutledge , 460 U.S. 719, 723-27, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). The second clause of § 1985(2) "prohibits conspiracies to deny any citizen equal protection of the laws or injure a citizen for his efforts to ensure the rights of others to equal protection." Bryant , 597 F.3d at 687. Since the equal *765 protection language in the second clause of § 1985(2) parallels the equal protection language in § 1985(3), the race or class-based animus requirement of § 1985(3) also applies to claims under the second part of § 1985(2). See Daigle v. Gulf State Utils. Co., Local Union No. 2286 , 794 F.2d 974, 979 (5th Cir. 1986) (citing Kimble v. D.J. McDuffy, Inc. , 648 F.2d 340, 346 (5th Cir. 1981) (en banc), cert. denied , 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) ).[204]
In this case, Plaintiff relies on the second clause of § 1985(2) and (3). The DA contends that Plaintiff has failed to state viable 42 U.S.C. § 1985(2) and (3) conspiracy claims against him. He argues that, "for the same reasons that preclude Plaintiff from having standing," and because "the allegations against D'Aquilla are not sufficient," Plaintiff fails to state a claim upon which relief may be granted.[205]
The Court finds that Plaintiff has alleged sufficient facts to support a claim for civil conspiracy under Sections 1983 and 1985. Plaintiff alleges in detail that the DA and the other named Defendants conspired together or that they were motivated by a class-based animus, i.e. , gender. Specifically, Plaintiff alleges:
From the moment of his arrest, Defendant Boeker was not treated as a suspect in a crime, but instead given preferential treatment by Defendant West Feliciana Parish District Attorney Samuel D. D'Aquilla and his office and West Feliciana Parish Sheriff J. Austin Daniel and his office.[206]
Within 24 hours of his arrest, Mr. Boeker's attorney Jerome Cy D'Aquilla - relative of Defendant District Attorney Sam D'Aquilla - secured two bond reductions totaling $77,000.00. Mr. Boeker did not spend a single night in custody and his remaining, reduced bond was paid largely by an unknown source from Ascension Parish.[207]
After his release, Defendant Boeker faced no investigation or scrutiny from the District Attorney or the Sheriff.[208]
Both the District Attorney and the Sheriff refused to examine or pick up Ms. Lefebure's rape kit and sexual assault examination, which showed bruising consistent with trauma.[209]
Defendant D'Aquilla's markup of the police report highlighted only possible discrepancies in Ms. Lefebure's description of the events. His handwritten notes cast only doubt on Ms. Lefebure, with 'drinking' written out and heavily underlined, and the words 'go get the stuff,' 'where are the texts,' and 'NO [illegible ] plead 5' and 'plead 5th.' None of these phrases were included in the police report itself or Ms. Lefebure's description of the events and Mr. and Mrs. Boeker are the only parties alleged to have been drinking at the time of either assault.[210]
Prior to the grand jury hearing Defendant D'Aquilla did not meet with Ms. Lefebure in person or speak with her about the assaults. He told reporters he was 'uncomfortable' with speaking with her. No one from Defendant D'Aquilla's *766 office or staff met with Ms. Lefebure either.[211]
Defendant D'Aquilla also noted that '[e]very time we have a grand jury, we present everything we have in our file.' If Defendant D'Aquilla's office had retrieved the rape kit as any other prosecutor would have, the photos of the bruising and the exam would have been presented to the grand jury.[212]
Defendant Sheriff Austin admitted to reporters at WBRZ that his office made an error by not picking up Ms. Lefebure's rape kit and exam and that it should have been processed sooner. He told the news station on June 26, 2017, that he had recently issued a verbal protocol to everyone in his office that rape kits need to be sent to the crime lab when they are collected.[213]
Defendant Sheriff Austin and Defendant District Attorney D'Aquilla did not pick up the rape kit and examination until, at the earliest, March 10, 2017. See Exhibit B. This was only days after WBRZ reported that the kit had not been retrieved or tested.[214]
Ms. Lefebure's rape kit did not make it to the state crime lab until six months after her assault and two months after Mr. D'Aquilla refused to his job as a district attorney and investigate and seek the indictment of Defendant Boeker.[215]
Instead of protecting her rights as the victim of a violent crime, the Defendants derided Ms. Lefebure throughout the process, denied her information about and access to victim resources, and violated her rights to equal protection and due process of the law by willfully refusing to do their jobs and instead colluding protect [sic] an alleged rapist from prosecution.[216]
Plaintiff is informed and believes and thereon alleges that each Defendant was at all material times an agent, servant, employee, partner, joint venture, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.[217]
Mr. Boeker's defense counsel was Attorney Jerome Cy D'Aquilla, a relative of the elected District Attorney and Defendant Sam D'Aquilla.[218]
On information and belief, after he was arrested Mr. Boeker met with Defendant D'Aquilla and/or Defendant Austin, and his lawyer and an unknown Warden from the prison to ensure that he was given preferential treatment and not required *767 to stay in jail for any length of time.[219]
During this meeting Defendant Boeker claimed that he and Ms. Lefebure had been having consensual sex and that she was lying. On information and belief, the unknown DOE Warden colluded with Defendant Boeker to corroborate his false claim of a consensual relationship.[220]
During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Mr. Boeker was not investigated for the alleged rapes.[221]
During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Mr. Boeker would not be convicted of the alleged rapes.[222]
During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Ms. Lefebure's constitutional rights to equal protection, due process, and a property right in her rape kit.[223]
Defendants D'Aquilla and Austin are the elected and effective policy makers for the District Attorney's Office and the Sheriff's Department, respectively.[224]
Finally, Plaintiff re-asserts these allegations in summarizing the supporting allegations for her Third Cause of Action pursuant to 42 U.S.C. §§ 1983 and 1985.[225]
As demonstrated above, Plaintiff's conspiracy allegations contain particular detail, including allegations of specific meetings and agreements in furtherance of the conspiracy and of "long-standing" practices adverse to women and sexual assault victims. Accordingly, the DA's Motion to Dismiss Plaintiff's claims under Sections 1983 and 1985 is DENIED.
F. State Law Claims
It appears that the only state law claim asserted against the DA is abuse of process. In Louisiana, "[t]he essential elements of a cause of action for abuse of process are (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding."[226] "The precise inquiry involves the misuse of a process already issued whereby a party attempts to obtain some result not proper under the law."[227] The DA moves to dismiss this claim on the grounds of absolute prosecutorial immunity.[228]
In Singleton v. Cannizzaro ,[229] the district court for the Eastern District of Louisiana *768 recently addressed the application of Imbler / Buckley absolute prosecutorial immunity to state law claims:
Because determining whether a prosecutor enjoys absolute immunity turns on "the nature of the function performed" by the prosecutor, this Court must analyze the "specific activities that give rise to the cause of action." In other words, absolute immunity attaches to specific conduct, not specific claims.20 If specific conduct is protected by absolute immunity, and that same conduct forms either a crucial foundation for or the entire basis of certain claims, a finding of absolute immunity may well defeat certain claims on a 12(b)(6) motion.[230]
* * *
[T]he Louisiana Supreme Court in Knapper v. Connick [681 So.2d 944 (La. 1996) ] held that prosecutors enjoy absolute immunity against state law claims in addition to the immunity they enjoy from § 1983 claims. The full scope of absolute prosecutorial immunity under Louisiana law is not clear, but the Louisiana Supreme Court in Knapper cited heavily to federal law in its decision and adopted the functional approach that federal courts employ when analyzing prosecutorial absolute immunity issues. For this reason, any conduct for which prosecutors enjoy absolute immunity in this case will apply equally to Plaintiffs' federal and state law claims.[231]
As set forth repeatedly above, Plaintiff has alleged detailed facts that, if proven, sufficiently state a claim for abuse of process under Louisiana law. Further, as held above regarding Plaintiff's federal claims, to the extent Plaintiff's state abuse of process claims implicate prosecutorial rather than investigative or administrative conduct, Defendant is entitled to absolute prosecutorial immunity for that conduct. Thus, the DA's Motion to Dismiss Plaintiff's state law abuse of process claim is GRANTED in part and DENIED in part. Plaintiff cannot maintain an individual abuse of process cause of action against the DA for conduct that is prosecutorial. The Defendant's motion is denied with respect to an individual capacity abuse of process claim for investigatory and administrative conduct and is also denied as to the abuse of process claims asserted against the Defendant in his official capacity under Louisiana law.
III. CONCLUSION
For the reasons stated above, the Motion to Dismiss[232] filed by Defendant, Samuel C. D'Aquilla, District Attorney for the 20th Judicial District, is GRANTED in part and DENIED in part as set forth above. Plaintiff's request for leave of court to amend her Complaint is GRANTED, a second and final time, and shall be submitted within thirty (30) days from the date of this Order. Plaintiff is also ordered to file a Rule 7(a) Response to the DA's assertion of the defense of qualified immunity as to the remaining individual capacity claims within this same deadline.
IT IS SO ORDERED.

Rec. Doc. Nos. 70 & 71.

Monell v. New York City Dep't of Soc. Serv, of City of New York , 436 U.S. 658, 691 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Graham , 473 U.S. at 165, 105 S.Ct. 3099 ; see also Bellard v. Gautreaux , No. CIV.A. 08-627, 2010 WL 3523051, at *4 (M.D. La. Sept. 3, 2010) amended in part, No. CIV.A. 08-627, 2010 WL 4977480 (M.D. La. Dec. 2, 2010), affirmed , 675 F.3d 454 (5th Cir. 2012) and affirmed , 675 F.3d 454 (5th Cir. 2012).

Parm v. Shumate , 513 F.3d 135, 142 (5th Cir. 2007).

Bennett v. City of Slidell , 735 F.2d 861, 862 (5th Cir.1984).

City of St. Louis v. Praprotnik , 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

Jett v. Dallas Indep. Sch. Dist. , 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (internal quotations omitted) (emphasis in original).

Piotrowski v. City of Houston , 237 F.3d 567, 579 (5th Cir. 2001).

Bennett v. Pippin , 74 F.3d 578, 586 (5th Cir.1996) (internal quotations and citations omitted) (emphasis in original).

Id.

Monell v. Dep't of Soc. Servs. , 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Id.

Cozzo v. Tangipahoa Parish Council-President Gov't , 279 F.3d 273, 289 (5th Cir. 2002) (citing City of Saint Louis v. Praprotnik , 485 U.S. 112, 124-25, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) ; Bennett v. Pippin , 74 F.3d 578, 586 (5th Cir.1996) ).

McClure v. Biesenbach , 355 Fed.Appx. 800, 802-03 (5th Cir. 2009) (unpublished) (citing Spiller v. City of Tex. City, Police Dep't , 130 F.3d 162 (5th Cir.1997) ).

Porter v. Epps , 659 F.3d 440, 446 (5th Cir. 2011).

Id. (quoting Rhyne v. Henderson Cnty. , 973 F.2d 386, 392 (5th Cir. 1992) ).

Valle v. City of Houston , 613 F.3d 536, 542 (5th Cir. 2010) (quoting Piotrowski v. City of Houston , 237 F.3d 567, 579 (5th Cir. 2001) (quoting Brown , 520 U.S. at 407, 117 S.Ct. 1382 )).

Board of Comm'rs of Bryan Cty. v. Brown , 520 U.S. 397, 411, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Jones v. Bock , 549 U.S. 199, 212-13, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit , 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) ).

Id.

See, e.g., Mack v. City of Abilene , 461 F.3d 547, 556 (5th Cir.2006) ; Ortiz v. Geo Group, Inc. , No. 07-645, 2008 WL 219564, at *2 (W.D.Tex. Jan.25, 2008) ; Jacobs v. Port Neches Police Dept. , No. 94-767, 1996 WL 363023, at *13-15 (E.D. Tex. June 26, 1996) ; DeFrancis v. Bush , 839 F.Supp. 13, 14 (E.D.Tex.1993).

Mack , 461 F.3d at 556 (quoting Leatherman , 507 U.S. at 168, 113 S.Ct. 1160 ).

Rec. Doc. No. 37.

See Rec. Doc. No. 57-1 fn 11 (acknowledging Fifth Circuit jurisprudence foreclosing the DA's argument).

See Kentucky v. Graham , 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ; Burge , 187 F.3d at 466 ; Hudson v. City of New Orleans , 174 F .3d 677, 691 (5th Cir. 1999). See also Spikes v. Phelps , 131 F. App'x 47, 49 (5th Cir. 2005) ("based on Louisiana law, ... a parish district attorney is not entitled to Eleventh Amendment immunity").

187 F.3d 452, 467 (5th Cir. 1999) (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit , 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) ).

Id. at 466-67 (emphasis added).

2007 WL 4699169, at *4 (W.D. La. Oct. 23, 2007).

Id. at *5 (citing Burge , 187 F.3d at 469 ).

Id. at *10.

Id.

La. Const. Art. V, § 26 ; see also La. Rev. Stat. § 16:1.

Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown , 520 U.S. 397, 417-19, 117 S. Ct. 1382, 1395, 137 L.Ed.2d 626 (1997) (Souter, J., dissenting), (quoting City of Canton v. Harris , 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) ).

Rec. Doc. No. 37, ¶¶ 22 & 23.

Id. at ¶ 94.

Id. at ¶ 96.

Id. at ¶ 98.

Id. at ¶ 103.

Id. at ¶ 9.

Id. at ¶ 10.

Id. at ¶ 11.

Id. at ¶ 12.

Id. at ¶ 14.

Id. at ¶ 17.

Id. at ¶ 20.

Id. at ¶ 21.

Id. at ¶ 26.

Id. at ¶ 27.

Id. at ¶ 77, 80.

Id. at ¶ 82.

The Court adopts by reference the discussion and analysis set forth above in Section II.D.1.a of this Ruling.

Rec. Doc. No. 37, ¶ 95.

Id. at ¶ 96.

Id. at ¶ 97.

Id. at ¶ 98.

Id. at ¶ 114.

Shipp , 234 F.3d at 914.

Monumental Task Comm., Inc. v. Foxx , No. 15-6905, 2016 WL 5780194, at *3 (E.D. La. Oct. 4, 2016) (citing Stotter v. Univ. of Tex. at San Antonio , 508 F.3d 812, 824 (5th Cir. 2007) )(emphasis added).

Pfannstiel v. City of Marion , 918 F.2d 1178, 1187 (5th Cir. 1990) ; see also Jabary v. City of Allen , 547 F. App'x 600, 610 (5th Cir. 2013) ("To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." (citing Cinel v. Connick , 15 F.3d 1338, 1343 (5th Cir.1994) ).

Arsenaux v. Roberts , 726 F.2d 1022, 1024 (5th Cir. 1982) (Rubin, J.).

Id. (citing Slotnick v. Staviskey , 560 F.2d 31, 33 (1st Cir. 1977) ).

Id. (citations omitted).

See id. at 1023-24.

Jabary , 547 F. App'x at 610 (quoting Twombly , 550 U.S. at 556, 127 S. Ct. 1955 ).

Id. (quoting Twombly , 550 U.S. at 557, 127 S. Ct. 1955 ).

Latiolais v. Cravins , 484 F. App'x 983, 991 (5th Cir. 2012) (citing Hale v. Townley , 45 F.3d 914, 920-21 (5th Cir.1995) ).

Jabary , 547 F. App'x at 610 (citing Hale , 45 F.3d at 920 ).

Hale , 45 F.3d at 920 (quoting Pfannstiel , 918 F.2d at 1187 ).

Morrow v. Washington , 672 F. App'x 351, 355 (5th Cir. 2016) (emphasis in original).

Hale , 45 F.3d at 921.

Bishop v. J.O. Wyatt Pharm. , 2015 WL 4997890, at *7 (N.D. Tex. Aug. 21, 2015).

Id. (citing Granville v. Hunt , 411 F.2d 9, 11 (5th Cir. 1969) ).

Suttles v. U.S. Postal Service , 927 F.Supp. 990, 1001 (S.D. Tex. 1996) (quoting Griffin v. Breckenridge , 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) ).

Payne v. Universal Recovery, Inc. , 2011 WL 7415414, at *8 (N.D. Tex. Dec. 7, 2011).

Rec. Doc. No. 57-1, p. 17.

Rec. Doc. No. 37, p. 2, ¶ 6.

Rec. Doc. No. 37, p. 2, ¶ 7.

Rec. Doc. No. 37, p. 2, ¶ 8.

Rec. Doc. No. 37, p. 3, ¶ 9.

Rec. Doc. No. 37, p. 3, ¶ 10.

Rec. Doc. No. 37, p. 3, ¶ 11.

Rec. Doc. No. 37, p. 6, ¶ 27.

Rec. Doc. No. 37, p. 6, ¶ 28.

Rec. Doc. No. 37, p. 6, ¶ 29.

Rec. Doc. No. 37, p. 6, ¶ 30.

Rec. Doc. No. 37, p. 7, ¶ 32.

Rec. Doc. No. 37, p. 10, ¶ 47.

Rec. Doc. No. 37, p. 15, ¶ 77.

Rec. Doc. No. 37, p. 15, ¶ 80.

Rec. Doc. No. 37, p. 15, ¶ 81.

Rec. Doc. No. 37, p. 15, ¶ 82.

Rec. Doc. No. 37, p. 16, ¶ 83.

Rec. Doc. No. 37, p. 16, ¶ 84.

Rec. Doc. No. 37, p. 16, ¶ 85.

Rec. Doc. No. 37, pp. 21-22, ¶¶ 117-126.

Duboue v. City of New Orleans , 909 F.2d 129, 132 (5th Cir. 1990) (citations omitted).

Id.

The Court notes that most of the caselaw upon which Defendant relies in seeking immunity from Plaintiff's state law claims concern malicious prosecution claims. Plaintiff is not an alleged perpetrator, criminal defendant, or former criminal defendant; rather, she is the purported victim of an alleged rape and alleged sexual assault. Therefore, the collection of malicious prosecution cases relied upon by Defendant are not germane to the issue of prosecutorial absolute immunity in this matter.

372 F.Supp.3d 389 (E.D. La. 2019).

Id. at *3 (citations omitted).

Id. at *4 (citations omitted).

Rec. Doc. No. 57.